OPINION OF THE COURT
Bellacosa, J.
The central issue on this appeal is whether the opportunity to cure the breach of a lease condition, a remedy available under RPAPL 753 (4), applies to ejectment actions commenced in the Supreme Court by an owner of a rent-stabilized cooperative apartment.
The surviving defendant tenant, Helene Diamond (her husband, defendant Sidney Diamond, died in January 1992) has resided in the rent-stabilized apartment at issue, a five-room leasehold located on Fifth Avenue in Manhattan, since 1965. Plaintiff purchased the shares and ownership of the apartment in 1982 subject to the tenants’ occupancy. In 1983, after serving three unfruitful notices on defendants to cure a violation of the lease (defendants’ installation of a washing machine and associated plumbing, without consent of the landlord), plaintiff Marianne Nestor began efforts to oust the tenants. In 1985, she started the instant action in Supreme Court seeking, among other branches of relief, ejectment of the tenants on the ground that they had breached the lease. Although Supreme Court found a technical breach, it granted defendants time to cure the violation. The Appellate Division affirmed and held that RPAPL 753 (4) was available in an ejectment action in Supreme Court (Nestor v Diamond, 174 AD2d 306). This Court granted leave to appeal and now affirms the order of the Appellate Division.
Section 753 (4) of the RPAPL states that "[i]n the event that such proceeding is based upon a claim that the tenant or lessee has breached a provision of the lease, the court shall grant a ten day stay of issuance of the warrant, during which time the respondent may correct such breach”. The phrase "such proceeding” refers to "proceeding[s] to recover the possession of premises” as defined in RPAPL 753 (1), more commonly referred to as summary proceedings which are customarily venued in the Civil Court of the City of New York.
Plaintiff relies upon the "such proceeding” phrase and the word "warrant” to urge her construction of RPAPL 753 (4); i.e., that its remedy for allowing a cure of this kind of lease *414 violation should be available only in summary proceedings commenced in the Civil Court. She argues that since a warrant is only issued in Civil Court actions, as contrasted to writs of assistance or orders of ejectment in Supreme Court actions, the use of the word "warrant” explicitly limits the availability of RPAPL 753 (4)’s remedial opportunity to the Civil Court. We conclude that plaintiffs argument is not persuasive, because ordinary statutory construction rules demonstrate that there is no impediment to the Supreme Court of the State of New York exercising jurisdiction in these circumstances (see, Matter of Steinberg v Steinberg, 18 NY2d 492, 497; McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [b]; §§ 95, 96).
It is a basic tenet of statutory construction that the "mischief to be corrected” and the spirit and purpose of the statute must be considered (Matter of Toomey v New York State Legislature, 2 NY2d 446, 448; 1 Kent, Commentaries, at 462, quoted in Matter of Di Brizzi, 303 NY 206, 220). RPAPL 753 (4) "is procedural and remedial in nature and it should be liberally construed to spread its beneficial effects as widely as possible” (Post v 120 E. End Ave. Corp., 62 NY2d 19, 24). The statute was enacted to "permit tenants to remain in possession by curing the violation after the rights of the parties have been adjudicated” (id., at 27) and to obviate "the need, in most cases, for the tenant to seek a Yellowstone injunction” (Killington Investors v Leino, 148 AD2d 334, 336; see, First Natl. Stores v Yellowstone Shopping Ctr., 21 NY2d 630 [a so-called Yellowstone injunction prevents expiration of the lease by tolling the running of the cure period]). The Appellate Division in the Leino case correctly summed up the rationale on statutory construction and policy grounds for the view we adopt:
"[A] residential tenant who forebears from commencing a declaratory judgment, believing that he [or she] can obtain complete relief in the Civil Court, would be deprived of the benefit of the statute if the landlord unexpectedly commences an action for ejectment in Supreme Court instead of a summary holdover proceeding in the Civil Court, if we were to hold that RPAPL 753 (4) [does] not apply. The result would clearly frustrate the very purpose underlying the statute” (id., at 336).
Thus, both courts in the instant matter correctly ruled against *415 plaintiff and in favor of the defendants on the essential ejectment effort.
This particular dispositive statutory construction analysis can also be placed in some perspective in light of the State Constitution’s conferral of unqualified general jurisdiction upon the Supreme Court (NY Const, art VI, § 7 [a]). That jurisdiction "includes 'all cases of every description in law and equity, from the most important and complicated to the most simple and insignificant’ ” (Maresca v Cuomo, 64 NY2d 242, 252, appeal dismissed 474 US 802, quoting De Hart v Hatch, 3 Hun 375, 380; see also, Thrasher v United States Liab. Ins. Co., 19 NY2d 159, 166). Thus, when the Legislature creates new remedies and classes of actions or procedures that are tracked to a particular court, it does not divest Supreme Court of its historic general power (see, NY Const, art VI, § 7 [b]; Siegel, NY Prac, at 15 [2d ed 1991]). The Supreme Court, of course, also retains wide discretion to reject or to retain cases seeking its rulings in appropriate and exceptional procedural circumstances, such as this one.
Thus, we conclude that as a matter of statutory interpretation, the commonly understood reference in RPAPL 753 (4) to "summary proceedings” and "warrant[s]” should not be construed in these circumstances to incorporate an absolute bar against Supreme Court exercising its authority with respect to plaintiff owner’s ejectment action.
Plaintiff’s appeal includes an ancillary argument that she was nevertheless entitled to attorney’s fees because the lease specifically provided that the defendant tenant would be liable for "[such] expenses as the landlord may incur for legal expenses” as a result of any breach of the lease.
The Appellate Division refused to grant attorney’s fees to plaintiff, relying on Nesbitt v New York City Conciliation & Appeals Bd. (56 NY2d 340). The Appellate Division’s rationale was that the plaintiff’s failure to tender a renewal lease to defendants, as directed, in effect canceled plaintiff’s right to attorney’s fees. The issue in Nesbitt was whether a "landlord’s refusal to offer renewal leases * * * constituted a failure to perform a covenant or agreement as is requisite to the application of section 234 of the Real Property Law” (id., at 346). Since Real Property Law § 234 is not implicated in this case, Nesbitt is inapplicable and the Appellate Division’s result in this respect, although correct, rests on an incorrect basis.
Ordinarily, only a prevailing party is entitled to attor *416 ney’s fees (see, Hooper Assocs. v AGS Computers, 74 NY2d 487, 491; Matter of A. G. Ship Maintenance Corp. v Lezak, 69 NY2d 1, 5; Mighty Midgets v Centennial Ins. Co., 47 NY2d 12, 21; City of Buffalo v Clement Co., 28 NY2d 241, 263). Inasmuch as plaintiff has not prevailed with respect to the central relief sought, that is, a possessory judgment, we conclude that she is not entitled to attorney’s fees under the facts and circumstances of this case.
Accordingly, the order of the Appellate Division should in all respects be affirmed, with costs.
Chief Judge Kaye and Judges Simons, Titone, Hancock, Jr., and Smith concur.
Order affirmed, with costs.