OPINION OF THE COURT
Sue Ann Hoahng, J.
Respondent tenant, Mary Williams, moves pursuant to *964 RPAPL 753 (4) for an order permanently staying the issuance of the warrant of eviction. Petitioner landlord, New York City Housing Authority (hereinafter NYCHA), cross-moves for an order awarding petitioner a judgment of possession and the issuance of a warrant of eviction.
The undisputed facts are briefly set forth as follows: On tenants’ default of a scheduled administrative hearing before the NYCHA, a Hearing Officer rendered a decision and disposition, dated March 21, 1994, that terminated the tenancy of Othalee Williams and Mary Williams in the subject premises located at 752 Henry Street; No. 6E, Brooklyn, New York 11231. The grounds of the disposition were the possession, the intent to sell, and the sale of cocaine and marihuana by three of Mr. and Mrs. Williams’ sons on four dates — November 12, 1987, December 1, 1987, January 20, 1988, and September 30, 1992. Additionally, on December 1, 1987, one of the sons was found to possess brass knuckles. Also listed as a ground for termination was the failure of the tenants to verify their income for the year 1987-1988. On April 6, 1994, in a "determination of status for continued occupancy”, a decision was made to terminate the tenancy of Mr. and Mrs. Williams. Mr. Williams died abruptly after this determination. Thereafter, Mrs. Williams attempted to vacate their default but her application was denied by a Hearing Officer on May 4, 1995. On February 21, 1996, a 30-day notice to vacate was served on Mrs. Williams, and this summary proceeding was commenced by service of the notice of petition and petition on April 19, 1996.
Both sides further agree that Mrs. Williams "is estopped from litigating the merits of the charges that led to the termination of her tenancy”. (Attorney’s affirmation in support of motion 5.) Nevertheless, the 65-year-old Mrs. Williams, who is widowed, needy, and infirm, in her affidavit in support of motion, states that there have been no further illegal incidents, that her sons did not at the time, nor presently, live with her (one son is now deceased), and that she lives alone. In essence, she claims that the conduct complained of has been cured. Petitioner fails to controvert any of the respondent’s sworn statements.
RPAPL 753 (4) expressly provides: "In the event that such [holdover] proceeding is based upon a claim that the tenant or lessee has breached a provision of the lease, the court shall grant a ten day stay of issuance of the warrant, during which time the respondent may correct such breach.” Although the *965 NYCHA has labeled Mrs. Williams’ tenancy as "month-to-month”, such a characterization may be misleading because it implies she resided in her apartment at the landlord’s sufferance. There was a lease agreement between the parties. Under the terms of this agreement Mrs. Williams had the right to a monthly tenancy, renewal of which was to be self-executing at the end of each monthly period. (See, 2 Rasch, New York Landlord and Tenant — Summary Proceedings § 1020 [2d ed] [defining monthly tenancy]; see also, Pugsley v Aikin, 11 NY 494 [1854] [the continuing right to tenancy is a springing interest that relates back to the original lease].) The April 6, 1994 decision of the administrative agency, NYCHA, terminated respondent’s tenancy because the misbehavior of her children breached the terms of the lease.
Superficially, it is true, as the NYCHA maintains, that this summary proceeding is based not on a breach of lease, but rather, on "Petitioner’s service of a thirty day notice to vacate pursuant to Respondent’s lease”. (Affirmation in opposition to motion, at 4, 8.) However, RPAPL 753 (4) is a remedial statute that must be construed liberally so as to extend its " 'beneficial effects as widely as possible’ ”. (Nestor v McDowell, 81 NY2d 410, 414 [1993]; Post v 120 E. End Ave. Corp., 62 NY2d 19, 24 [1984]; see also, Fairbanks Gardens Co. v Gandhi, 168 Misc 2d 128, 129 [App Term, 2d Dept 1996] [in which the Appellate Term, Second Department, modified its decision by holding that RPAPL 753 (4) applies in holdover proceedings based upon failure to sign a renewal lease].)
Moreover, the apparent fact that the landlord-tenant relationship has already been severed is of little consequence with respect to this statute. As the Court of Appeals explained in Post v 120 E. End Ave. Corp. (62 NY2d 19, supra), RPAPL 753 (4) was enacted to streamline landlord tenant proceedings and do away with the practice whereby respondents in holdover proceedings routinely obtained a Yellowstone preliminary injunction in the Supreme Court. (Supra, at 25.) The purpose of RPAPL 753 (4) was to "give[ ] the losing tenant what he would receive with a Yellowstone injunction in a Supreme Court action after losing, a period of time to cure the violation before being subject to removal”. (Supra, at 26.) The Court predicated its holding on the fact that "Civil Court has jurisdiction of landlord tenant disputes”. (Supra, at 28.) Enactment of RPAPL 753 (4) continued the procedural due process protection of allowing litigation on the merits without risk of forfeiture. (See, supra, at 26.) Both the Yellowstone injunction and *966 RPAPL 753 (4) simply shift the period during which the tenant must cure from before the determination until afterward. In Post, the Court explained that although, with the invocation of RPAPL 753 (4), the lease is technically expired, successful cure within the 10-day period actually resurrects or revives the lease. (See, supra, at 26-27.) Otherwise, the Court said, the statute would be mere "surplusage.” (Supra, at 27.) In addition, the Appellate Term, Second Department, in Lindsay Park Hous. Corp. v Clarke (NYLJ, Mar. 12, 1993, at 33, cols 1, 2), by directing the court to "consider the validity of tenant’s argument that she is entitled to relief under RPAPL 753 (4) and whether her cure of the condition was proper under the circumstances presented”, suggests that the Civil Court has such power.
The NYCHA argues that the case of Escalera v New York City Hous. Auth. (425 F2d 853 [1970]) and its several ensuing Federal consent decrees preclude the Civil Court from granting a stay under RPAPL 753 (4). Yet subdivision (4) of that statute, which grants the relevant power, was not added until 1982, well after Escalera. The Escalera court could not have contemplated a statute that was years away from existence, let alone have precluded the relief afforded by the statute. In fact, the Legislature did not provide in the statute an exception singling out NYCHA tenants from all others in this State and precluding them from obtaining the benefit of the curative power of RPAPL 753 (4). Nor does the NYCHA tender any reason why its tenants should not be allowed the same advantage that is available to all other leaseholding citizens of this city. Indeed, it is against public policy to deny the right to cure. (See, e.g., 61 E. 72nd St. Corp. v Zimberg, 161 AD2d 542 [1st Dept 1990].)
The NYCHA speciously contends that to grant a stay "is simply an attempt to relitigate the merits of the 'underlying termination’ ”. (Affirmation in opposition to motion, at 3, [f 6.) Clearly, the parties cannot relitigate an agency determination of nondesirability in the Civil Court. (See, New York Hous. Auth. v Clemente, NYLJ, Sept. 23, 1994, at 21, col 4 [App Term, 1st Dept].) In New York City Hous. Auth. v Thoms (NYLJ, June 17, 1993, at 23, col 4, at 24, col 1), the Appellate Term stated, "The fact that tenant defaulted at the administrative proceedings does not permit her to subsequently litigate the merits of the non-desirability claim in the housing court”. Yet it is Alice-In-Wonderland logic to argue that to grant a stay is to relitigate the underlying issue. It is incumbent upon this court to *967 provide a postjudgment cure period pursuant to RPAPL 753 (4). (See, e.g., 115-87 Owners Corp. v Dolger, 201 AD2d 340 [1st Dept 1994] [modifying the trial court’s judgment by providing a cure period]; Fairbanks Gardens v Gandhi, 168 Misc 2d 128, supra [modifying a final judgment to the extent of providing a 10-day stay]; Capital Holding Co. v Stavrolakes, NYLJ, Nov. 13, 1996, at 25, col 5 [reversing the Civil Court’s denial of summary judgment to the landlord but staying issuance of the warrant so that tenant may cure].) Just as the court is able to maintain jurisdiction over a settlement that allows the tenant a probationary period, so too is the court capable of distinguishing the difference between the underlying issue and whether there has been a cure to a breach.
The purpose of Escalera (supra) and its offspring was not to diminish tenant rights. Rather, that case and the ensuing consent decrees merely provided substitute process for the tenants of the NYCHA. To deny a NYCHA tenant the right to cure, however, is to abate a right available to all other similarly situated tenants.
Furthermore, aside from the issue as to whether the identity of the landlord makes a difference, NYCHA does not otherwise dispute that it would be appropriate to grant a 10-day stay with the purpose of affording the tenant an opportunity to cure. There is support for the proposition as well. (See, Matter of Dukuly v Aponte, 204 AD2d 189 [1st Dept 1994] [affirming the trial court’s decision to grant a postjudgment cure hearing, as "appropriate * * * in view of petitioner’s contentions that his sons have stopped their misbehavior at the housing project”].)
Accordingly, the landlord’s cross motion is granted to the extent of awarding judgment. However, the tenant’s motion for an order permanently staying issuance of the warrant of eviction pursuant to RPAPL 753 (4) is also granted.