■ LAURIE THOMPSON, Appellant, v 490 WEST END APARTMENTS CORP., Respondent and Third-Party Plaintiff-Respondent. DR. FELIX, Third-Party Defendant-Respondent. [676 NYS2d 73] —Judgment, Supreme Court, New York County (Edward Lehner, J.), entered August 13, 1997, which, after a nonjury trial, declared that plaintiff was not a holder of unsold

shares at the time she subleased the subject apartment to third-party defendant, and that her failure to obtain defendant cooperative's consent to subleasing said apartment was therefore a violation of the proprietary lease, and further awarded the cooperative possession of the subject apartment and attorneys' fees in the amount of $95,000, unanimously modified, on the law, to amend the judgment to include a 10-day cure period, and otherwise affirmed, without costs. Appeal from order, same court and Justice, entered December 20, 1996, unanimously dismissed, without costs, as subsumed within the appeal from the judgment.

Defendant 490 West End Apartments Corp. (Co-op) is a cooperative corporation that owns the premises located at 490 West End Avenue in Manhattan. Plaintiff is a proprietary lessee and shareholder with respect to apartment 1D in the building. Plaintiff utilized apartment 1D, a seven-room apartment, for both residential and business purposes. On November 6, 1992, plaintiff signed a contract of sale to purchase the shares for the adjoining apartment, apartment 1C, from the building's sponsor. The sale was subject to the rights of the existing tenants in possession. After the tenants vacated the premises, plaintiff sent a memo to the Co-op Board stating her intention to sublet apartment 1C to third-party defendant Dr. Felix. The sublease, commencing on August 1, 1994, gave Dr. Felix the unfettered right to sublet the apartment, and he availed himself of that option by entering into subleases with several other doctors and therapists. On October 20, 1994, the Co-op served plaintiff with a 10-day Notice to Cure, alleging that she was in breach of the proprietary lease by subletting apartment 1C without first obtaining approval from the Co-op's Board of Directors.

Plaintiff did not comply with the Notice to Cure, and instead commenced the instant action in November 1994 for a judgment declaring that she had the right to sublet apartment 1C without the Board's consent, and for a preliminary injunction against the Co-op enjoining it from terminating her proprietary lease or otherwise interfering with the rights of her subtenant. Plaintiff claimed that having purchased her shares from the sponsor, she was a "holder of unsold shares." Under the terms of the proprietary lease, such holders were expressly excluded from the Co-op's subletting restrictions. The Co-op opposed plaintiff's motion for an injunction and cross-moved for summary judgment dismissing the complaint. The Co-op argued that plaintiff was never designated a holder of unsold shares, and that she therefore violated the terms of the propri-

etary lease by subletting the apartment without the Board's consent.

Initially, the IAS Court denied plaintiff's motion for an injunction and dismissed the complaint. Justice Schlesinger found that, as a matter of law, plaintiff was not a holder of unsold shares because she was not designated as such by the sponsor, and, therefore, she had no right to sublet without the consent of the Board. However, upon plaintiff's motion for reargument, Justice Schlesinger reversed her decision, relying on this Court's decision in *Craig v Riverview E. Owners* (156 AD2d 157), and concluded that an issue of fact existed as to whether plaintiff was a holder of unsold shares. The court granted plaintiff's motion for a preliminary injunction, and also granted the Co-op's cross motion to the extent of permitting it to amend its counterclaim to include a request for a judgment of ejectment, and to add Dr. Felix as a defendant. The Co-op did not perfect its appeal of this order.

The action proceeded to trial before Justice Lehner, whose written decision was issued on November 22, 1996, and entered December 20, 1996.[1] The court held that the Co-op established by a preponderance of the evidence that plaintiff purchased apartment 1C with the intent of occupying it herself, and that, therefore, she was not a holder of unsold shares at the time she subleased it. Thus, the sublet granted to Dr. Felix without the Board's consent was a violation of the proprietary lease. With respect to the Co-op's counterclaim, the court noted that there was no request for a warrant of eviction in the Co-op's post-trial memorandum and that the claim for attorneys' fees had already been severed. The court stated it would retain jurisdiction to hear any application for a warrant of eviction, a hearing on attorneys' fees and the entry of judgment.

There were substantial post-verdict proceedings in this case. On January 8, 1997, plaintiff was served with a Notice of Termination by the Co-op, effective January 20, 1997. The termination notice stated that plaintiff's proprietary lease was being terminated because plaintiff failed to comply with the October 20, 1994 Notice to Cure. On January 9, 1997, the IAS Court signed plaintiff's order to show cause seeking to vacate the court's December 20th order, and to evict Dr. Felix, who

---

1. Preliminarily, Justice Lehner held, despite his stated misgivings, that Justice Schlesinger's ruling on reargument that an issue of fact existed as to whether plaintiff was a holder of unsold shares was the law of the case.

was not paying rent pursuant to his sublease.[2] By order dated March 6, 1997, the IAS Court denied plaintiff's motion to vacate the December 20th order, and granted the Co-op's cross motion for a warrant of eviction, but stayed the warrant until June 30, 1997.

Before the entry of final judgment, plaintiff made numerous additional applications to the court seeking to vacate or limit the court's eviction order. Additionally, after the Co-op served a Notice of Auction as to plaintiff's shares, plaintiff sought to stay the sale of her shares, asserting that her efforts to evict Dr. Felix constituted a cure of the violation. The Co-op responded that plaintiff's lease had already been terminated by the January 8th Notice of Termination, and that plaintiff's stock was thereafter deemed cancelled pursuant to the terms of the proprietary lease. The IAS Court denied all of plaintiff's applications. However, the Co-op represented that it would not sell plaintiff's shares prior to judgment being entered. At a May 15, 1997 conference, the IAS Court ruled that plaintiff's reference in her January 9th motion papers to evicting Dr. Felix did not constitute a formal application for such relief, and therefore did not constitute a cure of the violation.

Ultimately, final judgment was entered on August 13, 1997 and (1) declared that plaintiff was not a holder of unsold shares at the time she subleased apartment 1C without the Board's consent, and therefore violated the proprietary lease; (2) awarded possession of apartment 1C to the Co-op; (3) issued a warrant of eviction against plaintiff but stayed its execution until September 30, 1997; and (4) directed the clerk to enter judgment in favor of the Co-op and against plaintiff in the amount of $95,000 for attorneys' fees, costs and disbursements. Execution of the warrant of eviction was stayed pending determination of this appeal.

On appeal, plaintiff argues that at the time of the sublease she was a holder of unsold shares because she purchased the shares to apartment 1C directly from the sponsor, and that her status was never extinguished, because she purchased the apartment as an investment and never intended to occupy it. We disagree. Paragraph 38 (a) of the proprietary lease, upon which plaintiff relies, defines the term "unsold shares" as "the shares of the Lessor which were issued by the Lessor's grantor(s) or individuals produced by the Lessor's grantor(s)." It further states that unsold shares retain their character as

---

**2.** Plaintiff contends that the order to show cause was submitted to the court on January 6, 1997, but was not signed until January 9, 1997, the day after she received the notice of termination.

such, regardless of transfer, until they become "the property of a purchaser for bona fide occupancy," or the holder of such shares "becomes a bona fide occupant of the apartment."

Plaintiff misconstrues this provision of the proprietary lease. Plaintiff is the lessee, not the lessor (the Co-op), and therefore her shares do not fall within the definition of unsold shares. This reading is supported by certain regulations promulgated by the Attorney-General, which provide: "A holder of unsold shares is the sponsor or any individual designated to hold unsold shares by the sponsor. Such shares shall cease to be unsold shares when purchased by a purchaser for occupancy" (13 NYCRR 18.3 [w] [1]). Plaintiff admits that she was never designated by the sponsor as a holder of unsold shares. The regulations further provide that the sponsor must guarantee the payment of all maintenance charges and assessments due from a holder of unsold shares, and must represent that it has the financial resources to meet this obligation (13 NYCRR 18.3 [w] [3], [4]). Neither of these provisions was complied with, nor are there any other indicia that plaintiff achieved such status other than plaintiff's self-serving interpretation of paragraph 38 (a). Thus, plaintiff never acquired the status of a holder of unsold shares in the first place.

Plaintiff's reliance on this Court's decision in *Craig v Riverview E. Owners* (156 AD2d 157, *supra*) is misplaced. In *Craig*, which involved the same paragraph 38 (a) at issue here, the Court found that paragraph 38 was not dispositive of the status of the cooperative shares since "its operation is merely to extinguish the rights of a holder of unsold shares" (*supra,* at 158). Nonetheless, the *Craig* Court remanded for a hearing on the status of the petitioners' shares, apparently finding that the cooperative had failed to establish the petitioners' status independently of paragraph 38. In the present case, however, this burden was satisfied by our reading of the portion of paragraph 38 defining unsold shares as shares of the lessor, and by reference to the Attorney-General's regulations.

Even if plaintiff had acquired the status of a holder of unsold shares, the trial evidence amply supported the IAS Court's verdict that such status was extinguished, pursuant to paragraph 38 (a), by plaintiff's purchase of the shares with the intention of occupying the premises. The president of plaintiff's mortgage company testified that plaintiff told her that she intended to combine apartments 1D and 1C, and her residential loan application with Chemical Bank confirmed her intent to utilize both apartments as her primary residence. Although plaintiff claimed that the residential loan was for apartment

1D alone, her mortgage broker and accountant disputed this, and the UCC filing statement signed by plaintiff indicates that both apartments were the subject of the loan and security agreement. Further, the Co-op's president and sponsor testified that it was their understanding that plaintiff intended to occupy the apartment herself. Neither plaintiff's testimony to the contrary, nor the fact that she did not ultimately occupy the apartment, undermine the substantial evidence adduced at trial that she purchased the apartment with the intent to occupy it. Accordingly, we uphold the IAS Court's determination that plaintiff's status as a holder of unsold shares was extinguished, and that her sublet was therefore illegal and constituted a breach of her proprietary lease.

A question remains as to whether plaintiff cured the violation in a timely manner so as to retain possession of the apartment. An injunction staying plaintiff's time to comply with the October 20, 1994 Notice to Cure was in effect at least until December 20, 1996, when Justice Lehner's decision after trial was entered. However, it is not clear that the stay was automatically lifted at that point, as the Co-op argues. The December 20th order held that the plaintiff was in violation of her proprietary lease and that the court would entertain an application for a warrant of eviction. Although this holding at least implicitly vitiated the grounds for an injunction, the stay enjoining the Co-op from terminating plaintiff's leases was never explicitly lifted by the court, and arguably the cure period continued to be tolled prior to the entry of final judgment.

Several factors persuade us that plaintiff has not forfeited her right to cure the violation. While the IAS Court believed that plaintiff never attempted to cure the violation by moving to evict Dr. Felix, in her post-trial motion to vacate the court's November 22, 1996 verdict plaintiff additionally requested that the court "issue a warrant of eviction" against Dr. Felix. Thus, although plaintiff's counsel apparently believed he could seek the subtenant's ejectment by way of motion rather than a cross-claim, the fact remains that Dr. Felix's eviction, i.e., a cure, was in fact sought.

The Co-op argues that plaintiff's "motion" to evict Dr. Felix is irrelevant because her order to show cause was signed on January 9, 1997, one day after the Notice of Termination had been served on plaintiff. The effectiveness of the Notice of Termination, however, is highly questionable since, as noted, it is unclear whether the stay was automatically lifted after Justice Lehner's December 20th order (*see, Empire State Bldg. Assocs. v Trump Empire State Partners*, 245 AD2d 225 [notice

of termination ineffective where served before expiration of the operable cure period]).

Moreover, final judgment in this case was not entered until August 13, 1997. During the period between the December 20th order and the final judgment, plaintiff made clear her desire to evict Dr. Felix and to retain her shares. Significantly, during this same period, the Co-op entered into a stipulation with Dr. Felix to the effect that he would vacate the premises by a certain date. This stipulation, to which plaintiff was not a party, effectively cured the violation. In light of this stipulation, the IAS Court stated the only application it would accept from plaintiff would be one to vacate its December 20th order on the grounds that the stipulation constituted a cure. While the court's frustration with plaintiff's counsel's inability or unwillingness to make that precise application is understandable, we conclude that the applications seeking Dr. Felix's eviction demonstrated plaintiff's willingness to effect a cure, and that such cure could have been effected before the final judgment.

In any event, neither the parties nor the court made any reference to RPAPL 753 (4), which is applicable in these circumstances. RPAPL 753 (4) states that "[i]n the event that [a summary] proceeding is based upon a claim that the tenant or lessee has breached a provision of the lease, the court *shall* grant a ten day stay of issuance of the warrant, during which time the [tenant] may correct such breach" (emphasis added). The Court of Appeals has stated that RPAPL 753 (4) "[i]n effect * * * gives the losing tenant what he would receive with a *Yellowstone* injunction in a Supreme Court action after losing, a period of time to cure the violation before being subject to removal" (*Post v 120 E. End Ave. Corp.*, 62 NY2d 19, 26). While the statute by its terms applies only to summary proceedings, the Court of Appeals has held that the statute is applicable in Supreme Court ejectment actions (*Nestor v McDowell*, 81 NY2d 410, 415; *Killington Investors v Leino*, 148 AD2d 334, 336).

In the present case, the IAS Court never granted plaintiff her statutory right to cure. The case law has made clear that the tenant must be afforded 10 days from the judgment of possession to cure the violation, notwithstanding the termination of the lease (*see, New York City Hous. Auth. v Williams*, 170 Misc 2d 963; *Langham Mansions Co. v Bodine*, 117 Misc 2d 925, *lv dismissed* 59 NY2d 608; *cf., First Natl. Stores v Yellowstone Shopping Ctr.*, 21 NY2d 630). The denial of this right seriously prejudiced plaintiff's right to protect her substantial investment. Given these considerations, and "[p]articularly in

light of the guiding principle that equity abhors a forfeiture" (*Empire State Bldg. Assocs. v Trump Empire State Partners, supra,* at 229; *Langham Mansions Co. v Bodine, supra*), plaintiff is entitled to a 10-day cure period before the stay on the existing warrant of eviction is lifted (*see, 115-87 Owners Corp. v Dolger,* 201 AD2d 340, *lv denied* 84 NY2d 805; *Matter of Dukuly v Aponte,* 204 AD2d 189; *see also, Aryeh v 61 E. 86 Owners Corp.,* 249 AD2d 248).

Plaintiff's additional claims are meritless. Plaintiff is bound by the stipulation in which she agreed to pay defendant $95,000 in attorneys' fees. Her arguments state no valid ground to withdraw such a stipulation, and this aspect of the judgment will not be disturbed. Plaintiff's claim for rent owed by the subtenant was not properly before the IAS Court, as that court explicitly found, and consequently is not properly before us on this appeal. Concur—Milonas, J. P., Williams, Mazzarelli and Andrias, JJ.