[933 NYS2d 204]

CHELSEA 18 PARTNERS, LP, Appellant, v SHECK YEE MAK et al., Respondents.

First Department, November 3, 2011

**APPEARANCES OF COUNSEL**

**OPINION OF THE COURT**

CATTERSON, J.

In this landlord-tenant dispute, we find that the plaintiff landlord has the right to bring an action for common-law nuisance in Supreme Court in the face of defendant tenants' alleged four-year campaign of premeditated and malicious harassment designed to prevent the landlord from collecting lawful rents and effectively managing and operating its building. The landlord's complaint includes a litany of allegations amounting to 159 paragraphs in 43 pages, and the landlord seeks injunctive relief in the form of ejectment of the tenants as well as damages in the amount of $45,205.79 and punitive damages in the amount of $500,000.

We note at the outset that this action is clearly distinguishable from the type of action brought by a landlord in housing court where nuisance is a statutorily authorized basis for eviction, and where the action is generally brought for the protec-

tion and safety of a third party, namely the other tenants of a building.*

■ Hence, not only is Supreme Court a proper forum in this case, but we also find that the landlord's allegations of the tenants' uniquely egregious, scheming and recurring objectionable conduct are simply not amenable to adjudication in a summary proceeding in Civil Court.

The following facts are undisputed: The plaintiff landlord is the owner of a 26-unit walk-up apartment building in Lower Manhattan. The defendant tenants are members of a family that occupy two rent-controlled units in the landlord's building. Sheck Yee Mak and Choi Kuen Mak are the tenants of apartment 13, and their son, Michael Mak, is the tenant of apartment 15. The record reflects that the parties have been adversaries in several proceedings in the Housing Part of Civil Court for the tenants' nonpayment of rent, refusal of access, and harassment of other tenants.

In June 2010, the landlord served the tenants with notices of termination pursuant to Administrative Code § 26-408 (a) (2). The notice included this warning to the tenants: "[U]pon your failure to so quit, vacate and surrender possession thereof, the Landlord will commence an action or proceeding in the Courts of the State of New York to recover possession of the Subject Apartment[s]." It is undisputed that the tenants continue in possession of the two apartments without permission.

On August 2, 2010, the landlord brought this action in Supreme Court for, inter alia, common-law nuisance, seeking possession and/or monetary damages. By notice of motion dated August 22, 2010, the tenants moved to dismiss the complaint pursuant to CPLR 3211 (a) (2) and (5). They argued that Supreme Court lacks jurisdiction and that the action is barred by the doctrines of res judicata and collateral estoppel.

By order dated October 13, 2010, Supreme Court dismissed the landlord's complaint, describing the action as a "summary proceeding guised as a plenary action." The court noted that although the landlord seeks injunctive relief and money damages, the plenary action is "enmeshed" with an action seeking pos-

---

* *See e.g.* Administrative Code of City of NY § 26-408 (a) (2); 9 NYCRR 2104.2, 2204.2; *Brodcom W. Dev. Co. v Best*, 23 Misc 3d 1140(A), 2009 NY Slip Op 51208(U) (Civ Ct, NY County 2009); *33-39 E. 60th St. LLC v Hunter*, 21 Misc 3d 129(A), 2008 NY Slip Op 52011(U) (App Term, 1st Dept 2008); *17th Holding, LLC v Rivera*, 21 Misc 3d 55 (App Term, 2d Dept 2008); *405 E. 56th St., LLC v Morano*, 19 Misc 3d 62 (App Term, 1st Dept 2008).

session based on "non-payment of rent/nuisances/non-compliance with prior stipulations between the parties," and concluded that Civil Court is the proper forum for this action.

For the reasons set forth below, we reverse and reinstate the complaint. As a threshold issue, Supreme Court has unlimited general jurisdiction over all plenary real property actions, including those brought by a landlord against a tenant. (NY Const, art VI, § 7 [a]; see Nestor v McDowell, 81 NY2d 410, 415 [1993].) Moreover, as the landlord correctly asserts, it is for the plaintiff to determine how, and in which court, to plead its case. (Lex 33 Assoc. v Grasso, 283 AD2d 272, 273 [1st Dept 2001] [plaintiff entitled to "chart its own procedural course"].) Thus, the tenants are entirely incorrect in asserting that Supreme Court lacks subject matter jurisdiction.

Supreme Court, in its discretion, may decline to review an action it considers appropriately brought in Civil Court. (Nestor, 81 NY2d at 415; see also Cadle Co. v Lisa, 46 AD3d 422 [1st Dept 2007].) In this case, however, Supreme Court improvidently exercised that discretion. It clearly failed to understand the thrust of this action as a common-law cause of action for private nuisance arising from the landlord's interest in the use and enjoyment of its property.

In a common-law cause of action for nuisance, the plaintiff must sufficiently plead, and subsequently establish, the following elements: "(1) an interference substantial in nature, (2) intentional in origin, (3) unreasonable in character, (4) with a person's property right to use and enjoy land, (5) caused by another's conduct in acting or failure to act." (Copart Indus. v Consolidated Edison Co. of N.Y., 41 NY2d 564, 570 [1977]; see also Domen Holding Co. v Aranovich, 1 NY3d 117 [2003] [nuisance is implicated by a pattern of continuity or recurrence of objectionable conduct].)

In this case, the landlord alleges the following recurring objectionable conduct: The tenants illegally altered plumbing in both apartments, switching the position of the sink and the bathtub, and added outlets, switches and fixtures creating a hazardous electrical condition with exposed wiring. They then complained to the New York City Department of Buildings (hereinafter referred to as DOB) that the plumbing and electric in the apartments were defective, and the DOB and Environmental Control Board issued violations against the landlord requiring it to repair the tenants' handiwork. The tenants thwarted the landlord's attempts to cure the violations by refus-

ing access to the apartment, and then applied for rent reductions based on the very same conditions that they refused to allow the landlord to repair. Over a period of three years, the tenants procured 76 New York City Department of Housing Preservation violations against the landlord. No violations were lodged concerning other tenancies in the building.

The complaint further alleges that the tenants not only unjustifiably denied or failed to arrange access, but also, knowing of the agency and court-imposed deadlines, attempted to extort extra work from the landlord in return for access, such as a new linoleum floor and bathtub of the tenants' choosing; and that tenant Michael Mak attempted to coerce the building superintendent to agree to a $50,000 penalty if the workers were late or the work was not completed to code.

Of the 21 instances of denial of access catalogued in the landlord's complaint beginning in February 2008, only Michael Mak's denial of access to apartment 15 from November 2009 to March 2010 was addressed in a March 24, 2010 holdover proceeding and was settled by stipulation. Further, the landlord alleges that the Mak tenants harassed other tenants on the floor to the point of driving out those tenants, thereby forcing the landlord to bear the expense and inconvenience of repainting and reletting the apartment.

The harassment by the Mak tenants allegedly extended to the landlord and its staff: the tenants allegedly physically obstructed work, videotaped, and threatened and intimidated the landlord's workers by yelling and screaming at them. As a result, the building manager and superintendent were forced to remain in the apartments during the repairs to prevent altercations and to keep workers from walking off the job.

Michael Mak also allegedly accosted, harassed, and threatened the owner and operator of a café, the only commercial enterprise in the building, and filed meritless complaints with the New York City Department of Environmental Protection for excessive noise. The tenants also threatened and intimidated the landlord's attorney, including following him out of court hissing and muttering. On another occasion, the tenants refused to leave the building manager's office after the landlord's attorney declined to renegotiate a stipulation, and the police were summoned.

The complaint also chronicles the tenants' unjustified withholding of rent, forcing the landlord to bring three nonpayment proceedings in housing court in 2007, 2008 and 2010. Addition-

ally, the allegations of objectionable conduct include the tenants' multiple, duplicative applications to the New York State Division of Housing and Community Renewal for rent and fuel cost reductions.

Accepting all of the landlord's allegations as true and affording them every favorable inference, as we must on a CPLR 3211 motion to dismiss (*Salles v Chase Manhattan Bank*, 300 AD2d 226 [1st Dept 2002]), the landlord's complaint sufficiently pleads a pattern of recurring objectionable conduct. Moreover, the landlord sufficiently pleads that the tenants' interference with its use and enjoyment of the property is intentional. It is well established that interference " 'is intentional when the actor (a) acts for the purpose of causing it; or (b) knows that it is resulting or is substantially certain to result from his conduct.' " (*Copart Indus.*, 41 NY2d at 571, quoting Restatement of Torts § 825.) Here, the allegations include the tenants' unrebutted threats to the landlord that they would "not make this easy" on the landlord, and their statements that they had filed complaints because the landlord was "suing them"; the latter statement made in reference to the nonpayment proceeding the landlord brought in housing court for their months-long arrears.

Indeed, in many cases of private nuisance the intentional element is satisfied simply by a defendant's knowledge that interference with use and enjoyment *will be the result* of his/her intentional act. (*See 61 W. 62 Owners Corp. v CGM EMP LLC*, 77 AD3d 330 [1st Dept 2010], *affd as modified* 16 NY3d 822 [2011].) In contrast, this is one of the rare cases where the landlord's detailed complaint presents a clear picture of the tenants' scheme to intentionally and directly interfere with the landlord's use and enjoyment for the sole purpose of such interference; and where the tenants' recurring, objectionable conduct has deprived the landlord of the fruits of tenancy to the point that the landlord is no longer able to collect rent or provide services.

Finally, although the motion court did not directly address the tenants' argument that the doctrines of res judicata or collateral estoppel bar the landlord's action, we find this argument utterly without merit. In the face of the lengthy, detailed complaint and the tsunami of allegations set forth above, it is preposterous for the tenants to argue that the landlord is merely relitigating previous housing court proceedings. The references to prior proceedings serve only to further support landlord's assertion that it has a cognizable claim in common-law nuisance.

(*See e.g. Greene v Stone*, 160 AD2d 367 [1st Dept 1990]; *25th Realty Assoc. v Griggs*, 150 AD2d 155 [1st Dept 1989].)

Accordingly, the order of the Supreme Court, New York County (Joan M. Kenney, J.), entered on or about October 13, 2010, which granted the defendants' motion to dismiss the complaint, should be reversed, on the law, without costs, the motion denied, the complaint reinstated, and the matter remanded to Supreme Court for further proceedings.

SAXE, J.P., ACOSTA, ABDUS-SALAAM and ROMÁN, JJ., concur.

Order, Supreme Court, New York County, entered on or about October 13, 2010, reversed, on the law, without costs, the motion denied, the complaint reinstated, and the matter remanded to Supreme Court for further proceedings.