| |
|---|
| **Ioannou v 1 BK St. Corp.** |
| 2025 NY Slip Op 31426(U) |
| April 22, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 160523/2019 |
| Judge: Shlomo S. Hagler |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. SHLOMO S. HAGLER** PART 17

*Justice*

-------------------------------------------------------------------X

ATHAS IOANNOU

Plaintiff,

- v -

1 BK STREET CORP.

Defendant.

-------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 160523/2019 |
| MOTION DATE | 02/02/2024 |
| MOTION SEQ. NO. | 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 125

were read on this motion to/for _____ JUDGMENT - SUMMARY _____.

In this action seeking a rent-stabilized lease and damages for rent overcharges, plaintiff Athas Ioannou ("plaintiff") moves pursuant to CPLR 3212 for an order granting summary judgment in his favor and dismissing defendant 1 BK Street Corp.'s ("defendant") counterclaim for attorneys' fees. Defendant opposes. Upon the foregoing cited papers and after hearing oral argument on May 22, 2024, plaintiff's motion is granted in part.

## I. Procedural History and Factual Background

The following facts are drawn from the complaint and the affidavits. Plaintiff commenced this action on October 29, 2019. Defendant is the owner of the building located at 1-7 Bank St, a/k/a 87-95 Greenwich Ave, New York, New York (NY St Cts Elec Filing [NYSCEF] Doc No. 73, Complaint ¶¶ 2, 4). Plaintiff is a tenant of apartment 2M ("apartment") (*id.* ¶¶ 3, 5). The building received J-51 benefits continuously from 1977 through June 30, 2011 (*id.* ¶ 7).

Plaintiff initially became a tenant pursuant to a lease for a term commencing November 13, 2006 and ending November 30, 2007, at a rent of $3,200 per month ("Ioannou Affidavit")

[* 1]

(NYSCEF Doc No. 71 ¶ 5). The lease did not have a rent stabilization rider or a J-51 rider attached (*id.* ¶ 6). Plaintiff was not offered an opportunity to sign a two-year vacancy lease, and defendant did not notify him that the building was receiving J-51 benefits (*id.* ¶ 7-8). Plaintiff was not offered a renewal lease when the lease expired on November 30, 2007, and defendant continued to charge plaintiff $3,200 per month through the date of this motion, which he paid (*id.* ¶¶ 11-12). Plaintiff continues to pay a rent of $3,200 per month. Plaintiff further alleges that he was served with a Holdover Notice of Petition and Petition in 2012, which included a statement that "the apartment is not subject to Rent Stabilization Law because the monthly rent exceeds $2,000 per month" (*id.* ¶ 10). Plaintiff claims that according to the rent registration records filed by defendant with the New York State Division of Housing and Community Renewal ("DHCR"), the rent for the apartment was $543.56 per month, as of April 1998, when the apartment was registered as rent controlled (Complaint ¶ 28).

Isabel Negron ("Negron"), the property manager for defendant, claims that defendant deregulated the apartment in 2000 based upon and in reliance on DHCR's guidance ("Negron Affidavit") (NYSCEF Doc No. 100 ¶ 4). Negron claims that defendant was not aware of the court decisions and did not act in a fraudulent scheme when it deregulated the apartment in 2012 or in 2006 when it offered plaintiff a lease at $3,200 a month (*id.*). Negron disputes the last registered rent for the apartment and claims that per the DHCR rent roll, the last registered rent is $2,000 and not $543.56 (*id.* ¶ 7).

Around 1999-2000, a rent-controlled tenant, Moran, vacated the apartment, and defendant performed individual apartment improvements ("IAI"), by which defendant increased the rent to $2,000 a month (*id.* ¶ 8-9). Defendant stopped registering the rent for the apartment with the DHCR (*id.* ¶ 10). In 2000, defendant entered into a market free lease with a tenant named Mulloy, who

[* 2]

was required to pay $2,000 per month as defendant believed in good faith the apartment was deregulated (*id.* ¶ 13). From 2002-2003, the second and third lease with Mulloy required him to pay $2,350 under the same belief (*id.* ¶ 14-15). From 2004-2005, defendant entered into a free market lease with a tenant named Carella, which required him to pay $2,450 per month under the same belief, and in 2006, the rent was increased to $2,550 per month (*id.* ¶¶ 17-19). In 2006, relying on the past leases and good-faith belief that the apartment had been deregulated, defendant entered into a lease with plaintiff requiring him to pay $3,200 per month (*id.* ¶ 21). Negron further claims that defendant did not offer a renewal lease to plaintiff in good faith reliance on the then-current law and DHCR guidance that the apartment was not subject to rent stabilization laws (*id.* ¶ 22). Only after this lawsuit and discovery, defendant became aware that the law had changed, and DHCR's 1996 guidance was held to be incorrect (*id.* ¶ 25). Once defendant became aware of the change in the law, it took steps to ensure the apartment was properly registered as rent-stabilized (*id.* ¶ 26). The apartment is listed as rent stabilized in the 2022 and 2023 registration statements with DHCR (*id.* ¶ 27).

Plaintiff alleges three causes of action against defendant. The first is for rent overcharges. The second is for a declaratory judgment for a rent stabilized lease and to award plaintiff a monthly rent of $543.56 for a period of two years and an expiration date of two years and ninety days after a final unappealable judgment is rendered in this action and served with a notice of entry. The third is for an award of attorneys' fees (Complaint ¶¶ 40-63). Defendant filed an answer with general denials, affirmative defenses and a counterclaim for attorneys' fees (NYSCEF Doc No. 74, Answer).

[* 3]

## II. Parties' Contentions

Plaintiff contends that either under the prior law or the new law pursuant to the 2023 NY Senate Bill S2980-C and *Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal*, 35 NY3d 332 [2020], defendant is liable for a fraudulent scheme to deregulate the subject premises (NYSCEF Doc No. 84, Memorandum of Law in Support of Dov A. Treiman, Esq. [memo] at 5). Plaintiff takes the position that defendant failed to register the premises at the proper rent, failed to provide a rent stabilization rider to the lease, failed to provide a J-51 rider, and denied the rent stabilization status in its answer (*id.* at 6). Plaintiff argues that defendant's actions are fraudulent under the statute, and the default formula must be imposed if the rent cannot be reliably determined from the registered rents (*id.* at 6-7). Furthermore, plaintiff argues that defendant was on actual notice that the building's units must be registered as rent regulated when receiving J-51 benefits from the decision issued by the Housing Part on March 27, 2009, in *1 BK Street Corp v Joseph P. Versace*, L&T Index No. 051157/2008 [2009] ("Versace"), which held that the apartment located in a building that receives J-51 tax benefits is subject to rent stabilization (*id.* at 2; NYSCEF Doc No. 82).

In opposition, defendant argues that the rent overcharge claim is governed by the pre-HSTPA (Housing Stability and Tenant Protection Act of 2019) law that was in effect when the claim first accrued, and under *Matter of Regina*, the amendment to CPLR 213-a and Rent Stabilization Law of 1969 § 25-516 enacted under the HSTPA cannot be applied retroactively to overcharges that occurred prior to their enactment (NYSCEF Doc No. 117, Memorandum of Law in Opposition of Jennifer L. Stewart, Esq. [opp memo] at 4). Defendant further argues that the 2023 bill was amended by the 2024 NY Senate Bill S8011, and courts only need to consider the totality of circumstances in determining whether the owner knowingly engaged in a fraudulent

scheme to deregulate a unit. Defendant also argues that courts are not necessarily required to find all the elements of common law fraud before making a determination on a fraud claim, and under *Matter of Regina* the court cannot retroactively apply the new definition of fraud (*id.* at 5-6; *see Reichenbach v Javcin Invs. Corp.*, 2025 NY Slip Op 02023, 2025 WL 993930 [1st Dept 2025]). Second, under pre-HSTPA, there is a four-year lookback period, and the base date rent is $3,200, and under *Matter of Regina* plaintiff can only recover for increases added to the market base date rent that were over the legal limits during the recovery period (*id.* at 9). Defendant argues the motion should be denied because there is no claim for a rent overcharge given defendant did not increase the monthly rent and continued to charge the same rate of $3,200 (*id.* at 10). Furthermore, defendant maintains that plaintiff has not proven the elements of fraud in *Matter of Regina* and an increase in rent and failure to register the apartment with DHCR alone are insufficient to establish fraud (*id.* 10-12). Third, defendant claims that even if the HSTPA applied, there is still no claim for a rent overcharge as the rental history showed that defendant deregulated the apartment back in 2000 due to permitted vacancy. Furthermore, IAI increases, which resulted the rent reaching at $2,000 per month luxury deregulation threshold, and the subsequent rent increases were made upon the good faith belief that the apartment was properly deregulated (*id.* at 17). Moreover, defendant disputes the calculations of damages owed under the HTSPA as the last registered rent was $2,000 per month and not $543.56 per month as plaintiff claims (*id.* at 19-20). Lastly, defendant claims that the motion is premature as discovery is outstanding and plaintiff's deposition is necessary to establish plaintiff's reasonable reliance on the alleged misrepresentations of defendant (*id.* at 21-22).

In reply, plaintiff contends that the overall purpose of rent stabilization laws were to create a nondelegable duty of landlords as held in *Thornton v Baron*, 5 NY3d 175 [2005], which imposed

[* 5]

rent stabilization even where the tenant participates in the scheme to deregulate (NYSCEF Doc No. 121, Reply Affirmation of Dov A. Treiman, Esq. [reply aff] at 3-4). Plaintiff further argues that the decision in *Versace* is undisputed evidence that defendant knew since 2009 that all the apartments in the building were rent stabilized throughout the term of the J-51 tax abatement (*id.* at 6). Plaintiff further contends that defendant offered no excuse or explanation for its failure to register plaintiff as a rent stabilized tenant until 13 years after *Versace* and three years after plaintiff brought the action (*id.*). Defendant's knowledge and disregard of its obligations is evidence that defendant engaged in a fraudulent scheme to deregulate plaintiff's apartment under *Nolte v Bridgestone Assoc. LLC*, 167 AD3d 498 [1st Dept 2018][1] (*id.* at 7).

### III.   Discussion

#### A. Summary Judgment

"[T]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Ayotte v Gervasio*, 81 NY2d 1062, 1063 [1993], quoting *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). "[F]ailure to make such a showing requires a denial of the motion, regardless of the sufficiency of the opposing papers" (*Ayotte*, 81 NY2d at 1063 [internal quotation marks and citation omitted]). "Once this showing has been made, however, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (*Alvarez*, 68 NY2d at 324; *see also Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). "[M]ere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient" (*Zuckerman*, 49 NY2d at 562). "Summary judgment

---

[1] In *Nolte*, the court held that only if there was evidence that a landlord engaged in a fraudulent scheme to deregulate the apartment can the court go beyond the four-year limitations period when it examines the apartment's rental history.

**160523/2019   ATHAS IOANNOU vs. 1 BK STREET CORP.**                    **Page 6 of 13**
**Motion No.   003**

[* 6]

should not be granted where there is any doubt as to the existence of a factual issue or where the existence of a factual issue is arguable" (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 315 [2004]; *see also American Home Assur. Co. v Amerford Intl. Corp.*, 200 AD2d 472, 473 [1st Dept 1994]). "On a summary judgment motion, facts must be viewed in the light most favorable to the non-moving party" (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012] [internal quotation marks and citation omitted]).

### First Cause of Action for Rent Overcharges

Governing Law

On December 23, 2023, Governor Hochul signed into law Chapter 760 of the Laws of New York of 2023, which states in relevant part:

> "With respect to the calculation of legal rents for the period either prior to or subsequent to June 14, 2019, an owner shall be deemed to have committed fraud if the owner shall have committed a material breach of any duty arising under statutory, administrative or common law, to disclose truthfully to any tenant, government agency or judicial or administrative tribunal, the rent, regulatory status, or lease information, for purpose of claiming an unlawful rent or claiming to have deregulated an apartment, whether or not the owner's conduct would be considered fraud under the common law, and whether or not a complaining tenant specifically relied on untruthful or misleading statements in registrations, leases or other documents.
>
> The following conduct shall be presumed to have been the product of such fraud: (1) the unlawful deregulation of any apartment, including such deregulation as results from claiming an unlawful increase such as would have brought the rent over the deregulation threshold that existed under prior law, unless the landlord can prove good faith reliance on a directive or ruling by an administrative agency or court . . ." (L 2023, ch 760, Part B 2[b]).

2024 NY Senate Bill S8011, which amended Section 2 of Part B of Chapter 760 the Laws of 2023, states in relevant part:

"2-a. When a colorable claim that an owner has engaged in a fraudulent scheme to deregulate a unit is properly raised as part of a proceeding before a court of competent jurisdiction or the state division of housing and community renewal, a court of competent jurisdiction or the state division of housing and community renewal shall issue a determination as to whether the owner knowingly engaged in such fraudulent scheme after a consideration of the totality of the circumstances. In making such determination, the court or the division shall consider all of the relevant facts and all applicable statutory and regulatory law and controlling authorities, provided that there need not be a finding that all of the elements of common law fraud, including evidence of a misrepresentation of material fact, falsity, scienter, reliance and injury, were satisfied in order to make a determination that a fraudulent scheme to deregulate a unit was committed if the totality of the circumstances nonetheless indicate that such fraudulent scheme to deregulate a unit was committed" (L 2024, ch 95, § 4).

In the case at bar, irrespective of the newly enacted bill, plaintiff has demonstrated fraud by providing documentary evidence that he was not given a rent stabilized lease rider, the building is subject to rent stabilization, and defendant had actual notice that receiving J-51 benefits subjected the building to rent stabilization laws. Plaintiff has sufficiently demonstrated the unlawful deregulation of the apartment. Accordingly, plaintiff's motion for his first cause of action for rent overcharge claims is granted.

Plaintiff has sufficiently met his burden even under the pre-HSTPA law. Under pre-HSTPA, there is a four-year statute of limitations applied to overcharges (*Matter of Regina*, 35 NY3d at 352). However, the four-year lookback rule has "a limited common law exception . . . permitting tenants to use evidence preceding the four-year period . . . to prove that the [landlord] engaged in a fraudulent scheme to deregulate the apartment (*id.* at 354). To examine an apartment's rental history outside the strict four-year lookback period, a tenant must make a colorable claim of fraud (*id.* at 355). "Generally, an increase in the rent alone will not be sufficient to establish a 'colorable claim of fraud,' and a mere allegation of fraud alone, without more, will not be sufficient

[* 8]

to require DHCR to inquire further" (*Matter of Grimm v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin.*, 15 NY3d 358, 367 [2010]). "What is required is evidence of a landlord's fraudulent deregulation scheme to remove an apartment from the protections of rent stabilization" (*id.*). Fraud requires "evidence of a representation of material fact, falsity, scienter, reliance and injury" (*Matter of Regina*, 35 NY3d at 356 n 7). However, willful ignorance of relevant law may support a finding of scienter necessary to establish a fraudulent scheme to deregulate (*see Montera v KMR Amsterdam LLC*, 193 AD3d 102, 109 [1st Dept 2021]). In the years post *Roberts v Tishman Speyer Props., L.P.*, 13 NY3d 270 [2009] and *Gersten v 56 7th Ave. LLC*, 88 AD3d 189 [1st Dept 2011], New York courts have found that a landlord's failure to re-register apartments, while receiving J-51 benefits, could form the basis for a finding of a fraudulent scheme to deregulate and overcharge tenants (*see id.* at 107).

Here, the record demonstrates that defendant was receiving J-51 benefits for the building until June 30, 2011. Defendant waited until 2022 to register the apartment, which was not only after the commencement of this lawsuit, but also 11 years after August 2011, when *Gersten* held that *Roberts* must be applied retroactively, and required prompt re-registration of all apartments that been luxury deregulated in buildings receiving J-51 benefits. Based on the foregoing, plaintiff sufficiently established fraud either under the higher common law standard and certainly under the lower "totality of circumstances" standard (*see Hess v EDR Assets LLC*, 217 AD3d 542, 543 [1st Dept 2023] [the defendants' failure to re-register the units in the building as rent stabilized for years after *Roberts* and *Gersten*, and entering into leases that waive any protections of rent regulations supports a finding of the scienter requirement for fraud]; *see also Montera*, 193 AD3d at 109 [the defendant's action to re-register the apartment with DHCR after eight years after *Gersten* cannot be deemed to be prompt compliance]).

[* 9]

In opposition, defendant failed to raise a triable issue of fact. This Court is hard pressed to believe a sophisticated landlord like defendant did not know for 13 years that the property was subject to rent stabilization, particularly in light of the *Versace* decision rendered by Judge Cohen in 2009 against it, and for 11 years after the *Gersten* decision (*see id.* at 107] ["It is axiomatic that ignorance of the law is not a defense for the failure to comply with unambiguous legal obligations"] [citations omitted]). Assuming arguendo that defendant did not, initially, fraudulently deregulate the apartment, a landlord's willful noncompliance with its obligation to register apartments as rent stabilized after 2012 may be evidence demonstrating a scheme to defraud (*see Nolte*, 167 AD3d at 498). Furthermore, defendant's claim that plaintiff filed the motion without the aid of any discovery is meritless, as defendant failed to demonstrate "that discovery might lead to relevant evidence . . ." (*see Bacchus v Bronx Lebanon Hosp. Ctr.*, 192 AD3d 553, 554 [1st Dept 2021] [citations omitted]).

Calculation of Rent Overcharges

The parties dispute the amount of the base date rent, which is required to determine an overcharge. As plaintiff established a colorable fraud claim, the entire rent history can be examined to determine the legality of the base rent (*see Altschuler v Jobman 478/480, LLC*, 135 AD3d 439, 440 [1st Dept 2016], *lv dismissed* 28 NY3d 945 [2016], *lv denied* 29 NY3d 903 [2017], "[s]olely to ascertain whether fraud occurred – not to furnish evidence for calculation of the base date rent or permit recovery for years of overcharges barred by the statute of limitations. In fraud cases, the default formula should be used to calculate any rent overcharges" (*Matter of Regina*, 35 NY3d at 355).

Plaintiff submitted a certified copy of the DHCR registration history for the apartment which records that defendant: (1) registered the unit as "RC" (i.e. rent control) during the years

1984 -1999 for a legal regulated rent of $543.56; (2) registered it as RS (i.e. rent stabilized) with improvements in 2000 for a rent of $2,000; and (3) recorded it as "PE" (i.e., permanent exempt) from rent regulation as of July 2, 2001, by reason of "high rent vacancy"; and (4) recorded it as an exempt apartment from the years 2002 - 2020 (*see* NYSCEF Doc No. 78). The lease between defendant and Mulloy entered in 2000 states that the "[t]enant is aware of the fact that said premises is NOT subject to the Rent Stabilization Laws since the monthly rent for the premises is equivalent to or exceeds $2,000 per month" (*see* NYSCEF Doc No. 79). Defendant has not presented any evidence that any tenant paid $2,000 under a rent stabilized lease. Where a court finds that fraud has tainted the base rent so that reliable rent records are not available, a default formula, using the lower rent charged for a rent-stabilized apartment with the same number of rooms in the building on the relevant base date is employed to set the base rent and for overcharge calculations (*see Thornton*, 5NY3d at 179-180 n 1]). Therefore, this matter will be referred to a Special Referee for the calculation of overcharges based upon the default formula.

Moreover, the determination as to whether defendant has failed to establish by a preponderance of the evidence that the overcharge was not willful warranting an award of treble damages is hereby referred to a Special Referee (*see Altschuler*, 135 AD3d at 441 [an overcharge is presumed willful and warrants a treble damage award unless the owner establishes by a preponderance of the evidence that the overcharge was not willful]). If an award of treble damages is determined to be warranted, the calculation of treble damages is likewise referred to a Special Referee. Treble damages are properly limited to two years prior to the commencement of the claim, under the law in effect at the time this action was filed (*Matter of Regina,* 35 NY3d at 353 n 5).

**Second Cause of Action for Declaratory Judgment for a Rent Stabilized Lease**

The building was subject to rent stabilization by operation of law until June 30, 2011, because of its enrollment in the J-51 real estate tax abatement program. Since plaintiff entered his tenancy during the period when defendant was receiving J-51 tax benefits, the law is clear that his tenancy is subject to RSL, and that he was and is entitled to a rent-stabilized lease through his tenancy (*see Gersten*, 88AD3d at 198). As defendant has registered the apartment as rent stabilized, plaintiff is "entitled to rent-stabilized status for the duration of the tenancy . . ." (*Stulz v 305 Riverside Corp.*, 150 AD3d 558, 558 [1st Dept 2017] [citations omitted]). The dispute now is regarding the rental amount, which will be set upon a Special Referee's determination of the base rent for the overcharges. As such, plaintiff's request for a declaration of a rent stabilized lease is held in abeyance pending a determination of the appropriate base rent.

**Third Cause of Action and Defendant's Counterclaim for Attorneys' Fees**

Plaintiff's final cause of action and defendant's counterclaim seeks an award for attorneys' fees. Plaintiff as the prevailing party is entitled to attorneys' fees (*see Graham Ct. Owners Corp v Taylor*, 24 NY3d 742, 752 [2015], citing *Nestor v McDowell*, 81 NY2d 410, 415-416 [1993] ["only a prevailing party, who has achieved the central relief sought, is entitled to attorneys' fees"]). As such, defendant's counterclaim is dismissed.

Accordingly, it is hereby,

ORDERED that plaintiff Athas Ioannou's motion for summary judgment pursuant to CPLR 3212 is granted on plaintiff's first and third causes of action of the complaint, and a Special Referee shall be designated to hear and report to this Court on the following issues: (1) calculate the rent overcharges; (2) whether an award of treble damages is warranted and (2) if an award of treble damages is found to be warranted, calculate the amount of treble damages; and it is further

ORDERED that plaintiff Athas Ioannou's motion for summary judgment pursuant to CPLR 3212 on plaintiff's second cause of action is held in abeyance until determination of the base rent; and it is further

ORDERED that plaintiff Athas Ioannou's motion for summary judgment pursuant to CPLR 3212 to dismiss defendant 1 BK Street Corp.'s counterclaim for attorneys' fees is granted; and it is further

ORDERED that the issue of amount of reasonable attorneys' fees plaintiff may recover against defendant is severed and referred to a Special Referee to hear and report; and it is further

ORDERED that counsel for plaintiff shall, within 30 days from the date of this order, serve a copy of this order with notice of entry, together with a completed Information Sheet, upon the Special Referee Clerk in the General Clerk's Office (Room 119), who is directed to place this matter on the calendar for the Special Referee's Part for the earliest convenient date; and it is further

ORDERED that such service upon the Special Referee Clerk shall be made in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (accessible at the "E-filing" page on the court's website at the address www.nycourts.gov/supctmanh); and it is further

ORDERED that the Clerk is directed to enter judgment accordingly.

| 4/22/25 | | |
|---|---|---|
| DATE | | SHLOMO S. HAGLER, J.S.C. |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | X | REFERENCE |

**160523/2019   ATHAS IOANNOU vs. 1 BK STREET CORP.**
**Motion No.  003**

Page 13 of 13

[* 13]