[763 NYS2d 271]

In the Matter of CLASSIC REALTY LLC, Appellant, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, Respondent.

First Department, August 7, 2003

**APPEARANCES OF COUNSEL**

*Jeffrey R. Metz* of counsel (*Borah, Goldstein, Altschuler, Schwartz & Nahins, P.C.,* attorneys), for appellant.

*Roderick J. Walters* of counsel (*Carl Eckstein* on the brief; *Marcia P. Hirsch*, attorney), for respondent.

### OPINION OF THE COURT

Tom, J.P.

This case brings up for review the question whether a landlord under the factual circumstances of this case, having made an initial successful application for luxury decontrol, is entitled to a further inquiry when a tenant thereafter amends a previously submitted tax return which is then administratively certified to qualify the tenant to remain rent stabilized.

Petitioner owns the cooperative shares allocated to the proprietary lease for apartment 9B located at 1000 Park Avenue in Manhattan. Nonparty Judith Lacher is the tenant of record for apartment 9B and her husband and 13-year-old son reside with her. The proceeding was commenced on June 4, 1998, when petitioner filed a petition for luxury deregulation. The two years for which income verification had to be provided are 1996 and 1997. The tax return for 1997 was not originally submitted by the tenant insofar as the tenant-taxpayers were on extension, an explanation that is not controverted, which the New York State Division of Housing and Community Renewal (DHCR) credited and which is not implausible in view of the time periods involved. Upon request by DHCR, the tenants had timely submitted their income certification form, explaining why no return was yet available for 1997, declaring that their child had had no income, and providing other requested information. DHCR forwarded the information to the New York State Department of Taxation and Finance (DTF), which is authorized to verify income in this regard, but not to provide, or require, additional tax information. When DTF responded to DHCR that the tenants' income exceeded $175,000 for 1996 and 1997, DHCR contacted the tenants to provide them an opportunity to comment in response to a proposed deregulation of the apartment. The tenants responded that an amended return had been filed which would reflect that their income for the subject years did not exceed the $175,000 threshold. Subsequently, DTF undertook another verification search, including the amended return, and DTF then verified that the tenants' income during the relevant time period did not exceed $175,000. The landlord now corresponded with DHCR, suggesting that the filing of an amended return might have been a subterfuge to employ income shifting as to the subject years to make it appear that each annual income had not exceeded

$175,000. The landlord then also suggested that verification of prior years be reopened so as to inquire into whether income was shifted even further back in time so as to reduce taxable income in 1996 and 1997. The landlord also noted that the DTF verification did not indicate that the child had filed a tax return and speculated that the child's income was being shielded, but it is presently apparent, as DHCR explains, that a DHCR clerical error caused this confusion, and that the parents explained that the 13-year-old child had had no income. Although the landlord strives to find chicanery in that regard, there is no reason to doubt DHCR's concession of an inadvertent glitch. DHCR contends that the tenants have consistently provided all relevant information, that they never provided contradictory information, that their information was consistently accurate, that it was consistently provided in a timely manner, and that petitioner has provided no basis for its conjecture regarding income shifting to prior years. DHCR has declined to reopen verification of prior years' income, noting the absence of any reason or, under these circumstances, authority, to do so, there being no demonstration of fraud, irregularity or illegality. DHCR has also declined to hold a hearing to inquire into the explanation for the tenants filing an amended return, there being no demonstration by the landlord of wrongdoing. Upon judicial review of this determination, the motion court upheld the determination, finding that the petitioner landlord was motivated by mere speculation, and that DHCR's decision was not arbitrary, capricious or an abuse of discretion. Petitioner appeals.

Initially, the Rent Administrator clearly had discretion to verify the tenants' income a second time with the Tax Department when the tenants responded to her Notice of Proposed Deregulation and Opportunity to Comment by advising of their filing of an amended return for one of the two years under review. No other conclusion is possible given the explicitly provisional, tentative nature of the proceeding at the comment stage (Administrative Code of City of NY § 26-504.3 [c] [2]). Indeed, the second inquiry was entirely consistent with DHCR's general procedures set out in the Rent Stabilization Code (9 NYCRR 2507.5 [b], [c], [g]), and nothing in the luxury decontrol statute itself (Administrative Code § 26-504.1 *et seq.*) suggests that such an inquiry was prohibited (*cf. Matter of Dworman v New York State Div. of Hous. & Community Renewal*, 94 NY2d 359, 373 [1999]). Nor does it avail petitioner to assert that the tenants' amended tax return caused their

income in earlier years to exceed $175,000, since, in a luxury decontrol proceeding, the only income information required is whether the $175,000 threshold was exceeded in each of the two years under review (Administrative Code § 26-504.3 [b]; Tax Law § 171-b [3] [b]; *see Matter of Giffuni Bros. v New York State Div. of Hous. & Community Renewal*, 293 AD2d 402 [2002], *lv denied* 99 NY2d 505 [2003]).

The dissent, though, contends that it was arbitrary and capricious for DHCR to determine that the tenants' income was below the monetary threshold for deregulation on the basis of the tenants' amended tax return, and to decline to make further investigation as requested by petitioner in this regard. Petitioner continues to speculate that the tenants had employed an income shifting device to ostensibly lower the family income during the relevant time periods. As a consequence of this speculation, petitioner contends that the verification for prior years, to which such income might have been shifted, must be reopened to ascertain whether, in fact, this occurred.

Petitioner does not argue that the verification by DTF was inaccurate. Nor does the dissent suggest that DTF's own verification as to annual income during the relevant years was inaccurate. There is no indication in the record that the tenants' tax returns, as contrasted with the verification of such, were inaccurate such as would subject the tenants to severe sanctions and penalties for underreporting income, filing false returns, or filing other false documentation in connection with the DHCR proceeding. Nor is there any indication that the tenants have been less than forthright in providing requested information in a timely manner. Nor is the fact of an amended return for any particular year an indication of anything in particular: since amendments to tax returns may reflect increases in claimed income as well as decreases, or even just different allocations of income and deductions, the fact of an amended return does not, logically, trigger a more extensive inquiry into the income identified for the given year. In any event, the verification procedure is intended to do just that—verify a given year's income. The tenants' amended tax returns were accepted by DTF and can be deemed to be proper amendments (*cf. Giffuni Bros.*, 293 AD2d at 403).

As noted, petitioner has not shown fraud, illegality or an irregularity in this regard. Rather, we must presume that the verification provided by DTF is accurate. Yet, the logic of subjecting the amended return to further investigation necessarily conveys that a basis exists to conclude that there is an

inaccuracy either in the tax return or in the verification procedure. Petitioner contends that a hearing is necessary to ensure that the amendments were justified, a position adopted by the dissent. Yet that is the task of DTF in the first instance. Nothing would realistically be gained by simply requiring yet another verification, a point aptly made by DHCR. Moreover, even if a hearing would be held, DHCR's power to examine tax issues would have been limited. DHCR necessarily would rely on information provided by DTF, but DTF is only authorized to disclose to DHCR whether the tenants' household income exceeded $175,000, and, as noted above, "[n]o other information regarding the annual income of such persons shall be provided" (Tax Law § 171-b [3] [b]). Nor are the tenants required to provide "any information regarding their income except that which is requested on the [income certification] form" (Administrative Code § 26-403.1 [b]), so that, procedurally, petitioner's goal is not achievable in this manner. We have noted elsewhere the degree to which legislation has thus circumscribed DHCR (as well as judicial) review of the tax information to be included (*see Matter of Nestor v New York State Div. of Hous. & Community Renewal*, 257 AD2d 395 [1999], *lv denied* 93 NY2d 982 [1999]). Actual income is not subject to disclosure (Tax Law § 697 [e]; § 171-b [3] [b]; Administrative Code § 26-504.3 [b]). To require the submission of additional information, aside from just the verification of annual income, would transgress the policy goal of ascertaining whether the monetary threshold is exceeded with a minimum of intrusion on taxpayers' privacy.

Insofar as the record discloses no evidence of fraud, illegality or irregularities justifying such a proceeding, DHCR acted rationally and we find no basis to annul its determination. It cannot be said that DHCR acted arbitrarily and capriciously in declining to conduct a hearing, a determination, in any event, well within its exercise of discretion. Hence, in accordance with standard canons of judicial review of administrative determinations, we uphold DHCR's determination insofar as it acted rationally and in accordance with relevant law, and we decline to substitute our judgment for that of the agency in this regard (*see Matter of Ista Mgt. v State Div. of Hous. & Community Renewal*, 161 AD2d 424, 426 [1990]).

Accordingly, the judgment of the Supreme Court, New York County (Eileen Bransten, J.), entered May 30, 2001, dismissing petitioner landlord's application to annul respondent Division of Housing and Community Renewal's determination

denying petitioner's application for a high income deregulation order, should be affirmed, without costs.

SULLIVAN, J. (dissenting). This is an appeal from the dismissal of a CPLR article 78 proceeding seeking to annul a determination of the New York State Division of Housing and Community Renewal (DHCR) which, upon administrative review, upheld the decision of the Rent Administrator denying the petition for high income rent deregulation (Administrative Code of City of NY § 26-504.3). In my view, the order denying the petition for administrative review was arbitrary and capricious and the petition to annul that determination was improperly dismissed.

Petitioner Classic Realty LLC is the agent for the owner of the cooperative shares allocated to and the proprietary lessor of apartment 9B at 1000 Park Avenue, New York, New York, a 10-room apartment with a current monthly rent of $3,726.16. The tenant of record is nonparty Judith Lacher, who resides in the apartment with her husband, Michael Lacher, and their 13-year-old son, Nicholas.

In or about May 1998, the tenant completed an income certification form certifying that the total income in the preceding two calendar years (i.e., 1996 and 1997) of all persons occupying the apartment was $175,000 or less in each year. The tenant's responses on the form also indicated that she and her husband had filed New York State tax returns for 1996, but not for 1997, with the reason provided for the latter, "an extension." The form also stated that no New York State tax returns were filed by Nicholas in 1996 and 1997 because he "is a 13 year old child."

On June 4, 1998, petitioner, contesting the tenant's statement of household income, filed a petition with the New York State Division of Housing and Community Renewal for high income rent deregulation of the Lachers' apartment. On or about February 18, 1999, after the New York State Department of Taxation and Finance (DTF) had determined that Judith, Michael and Nicholas had filed tax returns for both 1996 and 1997 and that their total annual income in each of those years was in excess of $175,000, DHCR served petitioner and the tenant with a "Notice of Proposed Deregulation and of Opportunity to Comment," which advised them of DTF's determination and that the apartment was thus eligible for deregulation, and gave each side 30 days to comment on "such verification results."

In a February 23, 1999 response, petitioner requested an order of deregulation upon the expiration of the comment period. The tenant's response, dated March 17, 1999, stated that the family's total income did not exceed $175,000 in each of the subject years and that the returns on file with DTF would confirm that fact. The following day, the tenant submitted a follow-up response "clarif[ying] that the return on file is an amended return." DHCR thereafter forwarded the tenant's response to petitioner, giving petitioner an opportunity to respond and provide "any substantiating documentation available." Asserting that the law did not provide for such a process whereby tenants could file an amended tax return, petitioner responded with a request for clarification of DHCR policy as to the reverification of income once a match has been made. Further, petitioner questioned whether the tenant was attempting to defeat the deregulation petition by income shifting to earlier years, and urged that a reopening of the earlier years to examine the income claimed was warranted.

Nevertheless, at DHCR's request, DTF performed another income verification search, and in a letter dated May 17, 1999, advised DHCR that Michael and Judith Lacher had "[i]ncome of $175,000 or less in either or both years [1996 and 1997]." The letter listed Nicholas as an "occupant" of the apartment, but the space alongside his name for income information was left blank. Thereafter, on July 8, 1999, DHCR sent the parties a "Notice of Verification of Income Tax Information and of Opportunity to Comment" stating that DTF had determined the Lachers' income to be $175,000 or less "in either or both of the calendar years 1996 and 1997."

By letter dated July 15, 1999, petitioner responded, again arguing that the deregulation statute did not authorize a procedure whereby a tenant's income could be "re-verified" after amended returns are submitted and requesting a hearing at which the tenant must prove, inter alia, that the amendments were justified, that other returns were not amended and that Nicholas's income was not impacted as a consequence.

Thereafter, in a notice dated August 19, 1999, DHCR advised the parties that DTF found no tax return for Nicholas for the 1997 tax year.[1] Petitioner inferred from this information that, consistent with the February 18, 1999 notice, a return for Nicholas was found for the 1996 tax year. Noting the inconsistency, petitioner asked DHCR for a full investigation.

---

1. This was at variance with the February 18, 1999 notice, which had stated that a 1997 return for Nicholas was on file.

By order dated September 23, 1999, the Rent Administrator denied deregulation, concluding that, based upon a search of the tax returns filed with DTF, the total incomes of all occupants of the apartment "for whom tax records w[ere] found[,] w[ere] not in excess of $175,000 in one or both of the preceding two years."

Petitioner filed a petition for administrative review (PAR), reiterating its prior arguments that there was no statutory authority for the reverification of incomes once a match has been made and that inconsistences in the verification and amended returns give rise to a right to a hearing and to the reopening of prior years. By order dated July 7, 2000, the PAR was denied. The Commissioner noted "that it is DHCR policy to resubmit income verification information to DTF upon being notified that tenants have filed amended tax returns for the relevant years in question." This was done, the Commissioner continued, to make an "accurate determination" as to "household income[,] taking into account the updated tax information." Further, the Commissioner noted that Administrative Code § 26-504.3 (c) (2) (Rent Stabilization Law of 1969) provided that if DTF verified that a household income exceeded the $175,000 threshold, "the subject premises would be deregulated" and reasoned that where "DTF does *not* verify that the income exceeds $175,000 in both the preceding two years, the subject premises shall *not* be deregulated" (emphasis in original). Finally, the Commissioner concluded that "DHCR has no statutory authority to independently conduct its own income verification inquiry" and that "whether or not DHCR conducts a fact-finding hearing is totally discretionary. In this case, it is reasonable to conclude that no new relevant, probative evidence could have been educed [*sic*] from a hearing."

Petitioner thereafter commenced this article 78 proceeding seeking judicial review of the Commissioner's order. The IAS court dismissed the petition, finding that DHCR had a rational basis for denying the PAR. The court held that "DHCR's order satisfactorily states the basis for the DTF verification of the tenant's household information, and DHCR's reliance on the DTF verification results in denying the deregulation petition is wholly consistent with mandates of Administrative Code § 26-504.3," the luxury decontrol statute.

With the enactment of the Rent Regulation Reform Act of 1993 (L 1993, ch 253), the Legislature took "an important first step to address th[e] glaring inequity" in the rent regulation system whereby property owners were required to subsidize

high income tenants residing in rent-controlled and rent-stabilized apartments (Mem of Sen. Kemp Hannon, 1993 NY Legis Ann, at 176). Under the legislation, high rent housing accommodations subject to rent regulation can be deregulated if the monthly rental is $2,000 or more and the total adjusted gross income of the occupants exceeds $175,000 in each of the two preceding calendar years (Administrative Code of City of NY § 26-403.1 [rent control]; § 26-504.3 [rent stabilization]).[2] An owner who seeks luxury decontrol of a rent-stabilized apartment must send the tenant an "income certification form" (ICF) on or before May 1 of the given year (§ 26-504.3 [b]). The tenant must return the form, certifying whether the total annual household income in each of the preceding two calendar years was in excess of $175,000 (*id.*). If the tenant indicates income of less than $175,000 in one or both years and the owner disputes the amount of income, the owner may petition DHCR to verify the tenant's income (§ 26-504.3 [c] [1]; *see Matter of Dworman v New York State Div. of Hous. & Community Renewal*, 94 NY2d 359, 366 [1999]). Within a specified period, DHCR sends the tenant a notice of the proceeding requiring the tenant to provide "such information as the division and the department of taxation and finance shall require to verify whether the total annual income exceeds one hundred seventy-five thousand dollars in each such year" (§ 26-504.3 [c] [1]). The statute further provides, "If [DTF] determines that the total annual income is in excess of [$175,000] in each of the two preceding calendar years, [DHCR] shall * * * notify the owner and tenants of the results of such verification" (§ 26-504.3 [c] [2]). After a comment period in which both the owner and the tenant are afforded an opportunity to comment on such verification results, "the division shall, where appropriate, issue an order providing that such housing accommodation shall not be subject to the provisions of this law upon the expiration of the existing lease" (*id.*).

In our view, it was arbitrary and capricious for DHCR to determine, on the basis of only an amended tax return filed after DTF had verified that the income of the persons occupying the apartment was in excess of $175,000 in both 1996 and 1997, notwithstanding the tenant's certification to the contrary, that the tenant was below the monetary threshold for deregulation. The tenant did not challenge the accuracy or validity of the original verification result reflecting that she was

2. Prior to a 1997 amendment, effective January 1, 1998, the income threshold was $250,000.

over income for the subject years or dispute that tax returns were on file for all three occupants of the apartment for both 1996 and 1997. She merely asserted that an amended return would confirm that the household income was below the monetary threshold in each of the subject years. Under these circumstances, further investigation as to the circumstances surrounding the tenant's filing of amended tax returns was warranted. In this regard, it is noted that since the high income rent decontrol statute (Administrative Code § 26-504.3) was amended in 1997, effective January 1, 1998, the $250,000 income threshold for deregulation was in effect at the time the 1996 tax returns were filed. Thus, income for that year in excess of $175,000 would not affect the tenant's eligibility for rent regulation so long as the income was below $250,000.

Pursuant to the luxury decontrol statute, the only action expressly authorized after the comment period is deregulation, "where appropriate." While there is no merit to petitioner's argument that DHCR exceeded its authority when it requested DTF to reverify the tenant's annual income after she had filed amended tax returns, DHCR's blind acceptance in the circumstances herein of the newly minted report of annual income as reflected in the amended tax returns is irrational. Such a procedure should not be tolerated given the potential for abuse by tenants seeking to avoid decontrol and the absence of any mechanism to curb income shifting calculated to defeat luxury rent deregulation.

DHCR's reliance on *Matter of Giffuni Bros. v New York State Div. of Hous. & Community Renewal* (293 AD2d 402 [2002]) is misplaced. In that case, after DTF advised DHCR that the income of the tenants had not exceeded the $175,000 threshold in one or both of the subject years, the owner argued that the income information DTF provided to the owner respecting one of the years was not based on the tenants' income tax return for that year but rather on their application to file an extension to file an income tax return. The owner in *Giffuni* argued that DHCR should have obtained the tenants' actual income tax returns for the subject years. This Court held that it would not be consistent with the statutory provisions to permit the agency to request an actual tax return from a tenant and that, in any event, the record did not show that the information was premised on anything other than a tax return.

*Giffuni Bros.* is distinguishable. First of all, the owner in this case does not seek disclosure of the tenant's tax return; rather, it requests a hearing to "flesh out the circumstances

surrounding the filing of amended returns." In any event, the record in *Giffuni* reflects that the tenants' completed certification form indicated that they had filed a tax return for one of the subject years and that their income for that year did not exceed the $175,000 threshold. Since DTF was able to determine that the tenants had not exceeded the threshold for at least one of the years, even if their income for the other year had exceeded the threshold, the premises would not be subject to decontrol.

Thus, I would reverse the judgment and remand the matter to DHCR for further processing of petitioner's application including a hearing as to all aspects of the tenant's filing of amended tax returns for the years in question. The purpose of this hearing is not, as the majority suggests, to have "yet another verification" of income, but rather, as noted, to explore the circumstances regarding the filing of the amended returns. While, as the majority notes, at this juncture there is no evidence of fraud or illegality, that is precisely why, under the circumstances of this case, further inquiry is essential.

MAZZARELLI and GONZALEZ, JJ., concur with TOM, J.P.; SULLIVAN and WILLIAMS, JJ., dissent in a separate opinion by SULLIVAN, J.

Judgment, Supreme Court, New York County, entered May 30, 2001, affirmed, without costs.