[957 NYS2d 295]

KATZ 737 CORP., Appellant, v LESTER COHEN et al., Respondents.

First Department, December 20, 2012

APPEARANCES OF COUNSEL

*Stempel Bennett Claman & Hochberg, P.C.*, New York City (*Richard L. Claman* of counsel), for appellant.

*Moulinos & Associates, LLC*, New York City (*Peter Moulinos* of counsel), for respondents.

### OPINION OF THE COURT

Tom, J.P.

Defendants, Lester Cohen and Carol Cohen, have resided in apartment 6F, a rent-stabilized apartment, at 737 Park Avenue in Manhattan since April 1989. Plaintiff, Katz 737 Corp., owns and manages the building. The Cohens' current rent is $3,060 per month. Lester Cohen, who is over 80 years old, is unemployed and has a medically determined heart condition. Carol Cohen was, until 2010, a real estate broker employed by nonparty Corcoran Group as a senior vice-president. Carol alleged that she worked with "a group" of brokers at Corcoran Group and that she only earned a small portion of the real estate commissions that were split among the brokers in the group, at her superiors' discretion, after the deduction of expenses including advertising, transportation, and overhead, and office staff salaries.

From 2004 through 2008, Katz annually filed petitions with the Division of Housing and Community Renewal (DHCR) challenging the Cohens' qualification for rent-regulated status pursuant to the luxury deregulation law. DHCR denied each of Katz's petitions.

The luxury deregulation law provides for deregulation, by DHCR, of apartments with rents in excess of $2,000 per month where the occupants earn more than $175,000 per year for two consecutive years, as measured by the federal adjusted gross income reported on their New York State income tax return (Rent Stabilization Law of 1969 [Administrative Code of City of

NY] § 26-504.3).* The denial of a petition to deregulate an apartment only applies to that year's income review, and each annual lease cycle thereafter is evaluated separately.

Katz did not file for deregulation of the Cohens' apartment in either 2009 or 2010. However, in December 2010, rather than file a petition seeking deregulation of the apartment, Katz commenced this action in Supreme Court asserting three causes of action against the Cohens, namely: (1) for fraud, (2) for a judgment declaring that in the years for which DHCR denied luxury deregulation, the Cohens had annual income that exceeded $175,000, warranting the deregulation of the apartment, and (3) for indemnification of Katz for monies it allegedly paid to the Cohens' downstairs neighbor for damages asserted to have been caused by an unrepaired leak in the Cohens' apartment. Katz contends that, in light of Carol Cohen's brokers' group's sales, the Cohens' earnings should have exceeded $175,000 from 2004 through 2008 and that they falsely represented their income for those years on their income verification forms.

In January 2011, the Cohens moved to dismiss the action pursuant to CPLR 3211 (a) (2) (lack of subject matter jurisdiction), 3211 (a) (7) (failure to state a cause of action) and 3211 (a) (10) (failure to join a necessary party). They also sought sanctions for frivolous conduct, attorneys' fees and costs. The Cohens argued that the complaint's allegations were baseless, conclusory and speculative and that Katz's continual harassment since 2004 concerning their annual earnings had been an apparent effort to obtain market level rent or, alternatively, to force them to abandon the apartment to permit a condominium conversion.

Katz opposed the motion, arguing that it had incurred losses due to the Cohens' submission of fraudulent earning statements and that the Supreme Court was the only court that could award it damages for those losses. Katz argued that since DHCR had no statutory authority to "look behind" the Cohens' filed state tax returns, the instant action was required to enable Katz to obtain the discovery to find the truth regarding the Cohens' actual income. Katz noted that the Cohens, in support of their motion, did not submit an affidavit based on personal knowledge. Katz further argued that it had conducted an investigation and learned that Carol Cohen was a highly successful bro-

---

* For proceedings commenced on or after July 1, 2011, the deregulation income threshold is $200,000, and the deregulation rent threshold is $2,500 (Administrative Code § 26-504.3 [a] [2], [3]).

ker whose group sold "hundreds of millions of dollars of New York real estate." It argued that in light of those sales Carol should have had annual earnings of more than $175,000, and that the sales information alone supported the instant pleadings and warranted discovery on the income issue. Katz stated that it had previously requested financial documentation from the Cohens, including tax returns, W-2s, pay stubs, and possible S corporation filings, but the Cohens declined to disclose such information. Katz suggested that the Cohens may be hiding income "through a corporate entity." It argued that absent the instant plenary action, it would have no way of obtaining the necessary discovery to establish that the Cohens' income exceeded the annual threshold deregulation amount of $175,000.

The motion court granted the Cohens' motion to dismiss, finding that the complaint was "completely baseless" and failed to state a cause of action. The court noted that DHCR had already ruled on Katz's attempts to deregulate the unit and had denied the requested relief, and stated that the action would not be used to "circumvent the authority of the DHCR."

On appeal, Katz has abandoned its second cause of action for declaratory judgment and its third cause of action seeking indemnification for certain repair costs. Thus, the only question before this Court is whether Katz should be permitted to proceed on its first cause of action sounding in fraud.

■ This action is no more than an attempt to launch a belated collateral attack against determinations that are subject to the rule of administrative finality and by which Katz is bound. The question whether the subject dwelling unit continues to be subject to rent regulation has been contested before an administrative agency and decided adversely to Katz. It is uncontroverted that DHCR issued determinations for the years 2004 through 2008 denying Katz's petitions for deregulation and that Katz never sought administrative or judicial review of these determinations. Administrative determinations are binding on the parties and the courts until either vacated by the issuing agency or set aside upon judicial review (see e.g. 520 E. 81st St. Assoc. v Lenox Hill Hosp., 38 NY2d 525 [1976] [once a court decides that the Rent Stabilization Law is applicable, issues arising thereunder must be administratively determined until such remedy is exhausted]; Ament v Cohen, 16 AD2d 824 [2d Dept 1962] [Rent Administrator's order setting rent is conclusive and not subject to collateral attack]; Parisi v Hines, 131 Misc 2d 582, 584 [Civ Ct, NY County 1986], affd for reasons

*stated below* 134 Misc 2d 20 [App Term, 1st Dept 1986] [court bound by DHCR order, which is subject only to CPLR article 78 review]). Having been afforded due process and received a final determination, Katz may not relitigate the question of the regulatory status of the unit.

The present plenary action alleging that the Cohens fraudulently underreported their income for the years in issue to avoid luxury deregulation of their dwelling unit is merely an attempt to relitigate issues administratively determined and to circumvent the jurisdiction of DHCR to decide such matters. The law vests exclusive original jurisdiction in DHCR to determine whether a rent-stabilized tenant's household income exceeds the threshold for deregulation (Administrative Code § 26-504.3 [b], [c] [2]).

While the luxury deregulation provision does not expressly say that DHCR alone is to decide such issues, the intent of the legislature that luxury deregulation matters be decided by DHCR in the first instance can be reasonably inferred from the detailed language in section 26-504.3 as well as the statutory scheme, which explicitly provides for DHCR to hear and resolve luxury deregulation issues. As noted by the Court of Appeals in *Sohn v Calderon* (78 NY2d 755, 767 [1991]):

> "[T]he constitutionally protected jurisdiction of the Supreme Court does not prohibit the Legislature from conferring exclusive original jurisdiction upon an agency in connection with the administration of a statutory regulatory program. In situations where the Legislature has made that choice, the Supreme Court's power is limited to article 78 review, except where the applicability or constitutionality of the regulatory statute, or other like questions, are in issue."

The comprehensive procedure for luxury deregulation set forth in the Rent Stabilization Law confers authority on DHCR to oversee and enforce the prescribed rules and regulations. Significantly, the provision speaks only of petitioning DHCR, not the courts, to deregulate an apartment due to the high income of its occupants (Administrative Code § 26-504.3; *also see Matter of Classic Realty v New York State Div. of Hous. & Community Renewal*, 2 NY3d 142 [2004] [discussing comprehensive luxury deregulation statute in article 78 proceeding]; *Matter of Dworman v New York State Div. of Hous. & Community Renewal*, 94 NY2d 359 [1999] [same]).

■ Even assuming, arguendo, that the legislature did not place exclusive original subject matter jurisdiction in DHCR to decide luxury deregulation matters, it is reasonably inferred from the applicable provisions of the Rent Stabilization Law that the doctrine of primary jurisdiction enjoins courts sharing "concurrent jurisdiction to refrain from adjudicating disputes within an administrative agency's authority, particularly where the agency's specialized experience and technical expertise is involved" (*Sohn*, 78 NY2d at 768, citing *Capital Tel. Co. v Pattersonville Tel. Co.*, 56 NY2d 11, 22 [1982]).

As a policy matter, allowing plenary actions to be used as a vehicle for achieving luxury deregulation would circumvent the legislative intent that these matters be summarily and uniformly decided by DHCR, based on federal tax return information. Permitting the use of plenary actions for this purpose would invite harassment of tenants by landlords, unduly burden the courts, and pit typically deep-pocketed, resourceful owners against less financially secure tenants in costly, prolonged and at times speculative litigation. To permit Katz's common-law claim to proceed would establish an untenable precedent affording a ready means to relitigate DHCR's final determination of high income deregulation applications by the simple expedient of claiming fraud in reporting tenant income. This would effectively render the agency's final determination without effect and inundate the courts with countless luxury deregulation cases.

As this Court observed in *Matter of Nestor v New York State Div. of Hous. & Community Renewal* (257 AD2d 395, 396 [1st Dept 1999], *lv dismissed in part, denied in part* 93 NY2d 982 [1999]), a court must enforce a statute consistent with the legislative intent expressed in the enactment—which, in this case, provides for a single expedient determination based on a household's total adjusted gross income, as verified by the Department of Taxation and Finance (DTF); and while the criterion of household income might be less than comprehensive, "it has the advantage of affording a simple and consistent methodology" (*id.*). In accord with this view is *Matter of Classic Realty* (2 NY3d at 146), in which the Court of Appeals stated that "the luxury decontrol procedures . . . contemplate a single verification, the result of which is binding on all parties unless it can be shown that DTF made an error." Indeed, any concerns of fraud, if adequately shown by the owner, may be referred by DHCR to DTF in accordance with the same luxury deregulation

provisions (Administrative Code § 26-504.3; *see Matter of Power v New York State Div. of Hous. & Community Renewal*, 61 AD3d 544, 544 [1st Dept 2009] ["DHCR has jurisdiction to adjudicate luxury deregulation petitions and to request that the Department of Taxation and Finance verify the total annual income"], *lv denied* 13 NY3d 716 [2010]).

Further, as noted in *Sohn*, the exclusivity of an agency's jurisdiction may depend on the subject matter of the dispute. What is dispositive in the instant matter, however, is not only whether DHCR has exclusive original jurisdiction to issue a luxury decontrol order (which it does) but also that the agency has issued a final ruling that is both dispositive of the dispute between the parties and binding on them and on the courts. Having failed to pursue an administrative appeal before DHCR, Katz has failed to exhaust its administrative remedies and is precluded from seeking judicial review (*see Watergate II Apts. v Buffalo Sewer Auth.*, 46 NY2d 52, 57 [1978]). Nor is Katz relieved of the need to comply with the exhaustion rule by recasting its petition for review of the administrative determination as a tort action (*see California Suites, Inc. v Russo Demolition Inc.*, 98 AD3d 144 [1st Dept 2012] [rejecting constitutional claim asserted to avoid administrative requirements]).

Moreover, the complaint fails to state a fraud claim with the requisite particularity (*see* CPLR 3016 [b]). Katz's pleadings show that it placed no reliance upon the Cohens' statements of income or upon DHCR's findings on Katz's earlier petitions seeking luxury deregulation. Katz's non-reliance on the earlier DHCR determinations evidently spurred the instant plenary action to circumvent DHCR's determination. Further, Katz's fraud allegations are wholly speculative; there are no allegations offered from which it could reasonably be inferred that the Cohens provided fraudulent income statements, and there are no non-conclusory allegations that they earned more than $175,000 in two consecutive years (*see generally Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d 553, 560 [2009]). The crux of Katz's fraud argument, that the Cohens fraudulently hid their annual income in an S corporation that cannot be traced without proper discovery, is likewise without merit since that income cannot be considered for purposes of determining whether the Cohens met the $175,000 threshold to warrant luxury deregulation (*see e.g. Matter of Nestor v New York State Div. of Hous. & Community Renewal*, 257 AD2d 395, 396 [1999]). Thus, there is no basis upon which this action may be maintained.

Accordingly, the order of the Supreme Court, New York County (Milton A. Tingling, J.), entered September 30, 2011, which granted defendants' motion to dismiss the complaint, should be affirmed, with costs.

ANDRIAS, J. (concurring). I agree that the complaint was properly dismissed. However, I write separately to express my view that the statutory scheme for luxury deregulation precludes plaintiff's common-law fraud cause of action.

Pursuant to Rent Stabilization Law (Administrative Code of City of NY) §§ 26-504.1 and 26-504.3, a rent-stabilized apartment that has a legal regulated rent of at least $2,000 per month is eligible for luxury deregulation if the combined annual income of all persons occupying the unit as their primary residence exceeds $175,000 for each of the two years preceding the owner's petition.* Rent Stabilization Law § 26-504.3 (a) (1) provides that "annual income shall mean the federal adjusted gross income as reported on the New York state income tax return." Pursuant to Rent Stabilization Law § 26-504.3 (b) and Tax Law § 171-b, the New York State Department of Taxation and Finance (DTF) is authorized to verify, at the request of the New York State Division of Housing and Community Renewal (DHCR), whether the total annual income exceeds or is below the $175,000 threshold.

Defendants, Lester Cohen and Carol Cohen, are tenants of a rent-stabilized apartment in a building that was owned by plaintiff. Although their monthly rent exceeded $2,000, from 2004 through 2008, DHCR denied plaintiff's yearly petitions for luxury deregulation after DTF verified that defendants' federal adjusted gross income did not exceed the $175,000 threshold.

In 2010, plaintiff commenced this action. In its first cause of action, plaintiff seeks to recover damages for common-law fraud, based on allegations that defendant Carol Cohen, a successful real estate broker, affirmatively manipulated the annual income shown in her tax returns to bring it below the $175,000 threshold.

Citing *ABN AMRO Bank, N.V. v MBIA Inc.* (81 AD3d 237 [1st Dept 2011], *mod* 17 NY3d 208 [2011]), *Assured Guar. (UK) Ltd. v J.P. Morgan Inv. Mgt. Inc.* (18 NY3d 341 [2011]), *61 W. 62 Owners Corp. v CGM EMP LLC* (77 AD3d 330 [1st Dept 2010],

---

* For proceedings commenced on or after July 1, 2011, the deregulation income threshold is $200,000 and the deregulation rent threshold is $2,500 (Administrative Code § 26-504.3 [a] [2], [3]).

*mod on other grounds and remanded* 16 NY3d 822 [2011]), and *Chelsea 18 Partners, LP v Sheck Yee Mak* (90 AD3d 38 [1st Dept 2011]), Justice Catterson, in his concurrence, opines that there is nothing inherent in the statutory scheme for rent regulation that would preclude a common-law claim for fraud. However, in *Assured Guar. (UK) Ltd.*, the Court of Appeals explained:

> "Read together, *CPC Intl.* [*v McKesson Corp.* (70 NY2d 268 [1987])] and *Kerusa* [*Co. LLC v W10Z/ 515 Real Estate Ltd. Partnership* (12 NY3d 236 [2009])] stand for the proposition that a private litigant may not pursue a common-law cause of action where the claim is predicated solely on a violation of the Martin Act or its implementing regulations and would not exist but for the statute. But, an injured investor may bring a common-law claim (for fraud or otherwise) that is not entirely dependent on the Martin Act for its viability. Mere overlap between the common law and the Martin Act is not enough to extinguish common-law remedies" (18 NY3d at 353).

The gravamen of plaintiff's cause of action is that defendant Carol Cohen fraudulently used a closely held corporation and improper corporate and personal deductions to manipulate her annual income in order to avoid luxury deregulation. Unlike the nuisance claims in *61 W. 62 Owners Corp.* and *Chelsea 18 Partners, LP*, the cause of action is entirely dependent on the existence of the luxury deregulation statute for its viability. But for the statute, plaintiff could not claim to be damaged by Mrs. Cohen's allegedly fraudulent conduct in connection with the filing of her tax returns.

Further, "the luxury decontrol procedures . . . contemplate a single verification, the result of which is binding on all parties unless it can be shown that DTF made an error" (*Matter of Classic Realty v New York State Div. of Hous. & Community Renewal*, 2 NY3d 142, 146 [2004]). Because plaintiff does not allege any wrongs that would be actionable independent of the statute, to allow the use of plenary actions for luxury deregulation, or for obtaining damages based on a tenant's alleged fraudulent conduct in connection with luxury deregulation proceedings, would circumvent the legislative intent that these matters be heard and decided by DHCR based on state tax return information and that any concerns of fraud be referred by DHCR to DTF in accordance with the luxury deregulation provisions (*see*

Administrative Code § 26-504.3 [a] [1]; *see also Matter of Power v New York State Div. of Hous. & Community Renewal*, 61 AD3d 544 [1st Dept 2009], *lv denied* 13 NY3d 716 [2010]).

Accordingly, the common-law fraud cause of action was correctly dismissed (*see Berenger v 261 W. LLC*, 93 AD3d 175, 184 [1st Dept 2012] ["There is no private right of action where the fraud and misrepresentation relies entirely on alleged omissions in filings required by the Martin Act"]; *Han v Hertz Corp.*, 12 AD3d 195, 196 [1st Dept 2004] [customer did not possess a private right of action under former General Business Law § 396-z because his quasi contract claim was admittedly dependent on the allegation that the form contract was automatically voided by former General Business Law § 396-z (10)]).

In any event, we all agree that the complaint fails to state a fraud claim with the requisite particularity (*see* CPLR 3016 [b]). Plaintiff's fraud allegations are wholly speculative, since there are no allegations from which it could reasonably be inferred that defendants provided fraudulent income statements, and there are no non-conclusory allegations that defendants earned over $175,000 in two consecutive years. The crux of plaintiff's fraud argument, that defendants fraudulently hid their annual income under a closely held corporation that cannot be traced without proper discovery, is not sustainable since the income of a corporation cannot be considered for purposes of determining whether defendants met the $175,000 threshold to warrant luxury deregulation (*see e.g. Matter of Nestor v New York State Div. of Hous. & Community Renewal*, 257 AD2d 395 [1st Dept 1999], *lv dismissed in part, denied in part* 93 NY2d 982 [1999]).

CATTERSON, J. (concurring). Although I concur in the outcome, namely the dismissal of Katz 737 Corp.'s (hereinafter referred to as the landlord) complaint, I do so on the ground that the landlord failed to plead fraud with particularity. I disagree with Justice Andrias's concurrence that the landlord's common-law cause of action for damages arising from the defendants' alleged fraud is preempted by the luxury decontrol statute. I also disagree with the majority that the landlord's action is foreclosed on the ground that the New York State Division of Housing and Community Renewal (hereinafter referred to as DHCR) has "exclusive" jurisdiction in the matter, and that the landlord cannot "relitigate" an issue already decided by the agency. As set forth more fully below, well-established precedent militates against extinguishing common-law claims and remedies even where legislative regulatory schemes exist. Moreover, in this

case, the statute does not provide a remedy for the landlord's allegation that the defendants circumvented the statutory scheme by fraudulent conduct.

The defendants, Lester Cohen and Carol Cohen, have resided as tenants in an apartment at 737 Park Avenue between 71st and 72nd Streets in Manhattan since April 1989. The lease and tenancy at issue are subject to the New York Rent Stabilization Law. The Cohens' current rent is $3,060 per month. Lester Cohen, who is over 80 years old, is retired. Carol Cohen was, until 2010, a real estate broker employed as a senior vice-president by nonparty Corcoran Group.

Mrs. Cohen asserted that she worked with "a group" of brokers at Corcoran Group and that she only earned a small portion of the real estate commissions that were split among the brokers in the group at her superiors' discretion, and only after the deduction of expenses like advertising, transportation, and overhead and office staff salaries.

Every year, from 2004 through 2008, the landlord challenged the Cohens' qualification for rent-regulated status with the DHCR. The DHCR denied each of the landlord's petitions seeking deregulation.

By statute enacted in 1993 (amended effective as of 1998), the legislature provided for the DHCR to deregulate apartments with rents in excess of $2,000 per month where the occupants earned more than a specified "threshold" dollar amount per year (originally $250,000 per year, amended effective as of 1998 to $175,000 per year) for two consecutive years. (Administrative Code of City of NY § 26-504.3.) This income is measured by the occupants' federal adjusted gross income as reported on their New York State income tax returns. (*See id.*; Rent Stabilization Code [9 NYCRR] § 2531.1 [a], [b]; *Gudz v Jemrock Realty Co., LLC*, 2011 NY Slip Op 31647[U] [Sup Ct, NY County 2011].) The denial of a petition to deregulate an apartment applies only to the year under review, and each annual lease cycle thereafter "is processed separately on its own merits."

The landlord did not file for deregulation of the Cohens' apartment in either 2009 or 2010. However, in December 2010, the landlord commenced the instant plenary action against the Cohens asserting three causes of action, namely: (1) for fraud, (2) for a judgment declaring that the Cohens had annual income that exceeded $175,000, warranting the deregulation of the apartment, and (3) for indemnification for the $3,635.40 that the landlord allegedly paid to the Cohens' downstairs neighbor

for damages allegedly caused by an unrepaired leak in the Cohens' apartment.

The Cohens moved to dismiss the action pursuant to CPLR 3211 (a) (2) (lack of subject matter jurisdiction), 3211 (a) (7) (failure to state a cause of action) and 3211 (a) (10) (failure to join a necessary party). They also sought sanctions against the landlord for frivolous conduct, attorneys' fees and costs.

The landlord opposed the motion, arguing that it had incurred losses due to the Cohens' submission of fraudulent earning statements and that the Supreme Court was the only court that could award it damages for those losses. The landlord argued that since the DHCR had no statutory authority to "look behind" the Cohens' filed state tax returns (*see generally Matter of Nestor v New York State Div. of Hous. & Community Renewal*, 257 AD2d 395 [1st Dept 1999], *lv dismissed in part and denied in part* 93 NY2d 982 [1999]), the instant action was required to enable Katz to obtain discovery to find the truth as to the Cohens' actual income.

The landlord argued that it had conducted an investigation and learned that Mrs. Cohen was a highly successful broker whose group sold "hundreds of millions of dollars of New York real estate." It argued that in light of such sales, Mrs. Cohen should have had annual earnings of more than $175,000 and that the sales information alone supported the instant pleadings, and warranted giving it an opportunity to obtain discovery on the "income" issue. The landlord argued that absent the instant plenary action, it had no way of obtaining the necessary discovery to establish that the Cohens' income exceeded the annual threshold deregulation amount of $175,000.

By order entered September 30, 2011, the court granted the Cohens' motion to dismiss the landlord's action. The court found that the complaint was "completely baseless" and failed to state a cause of action, particularly as the DHCR had already ruled on the landlord's attempts to deregulate the unit and had denied the relief the landlord sought. The court found that the landlord was improperly attempting to "circumvent the authority of the DHCR."

For the reasons that follow, in my opinion, the landlord's common-law cause of action is not preempted by luxury deregulation law. Furthermore, the DHCR's decisions on the landlord's petitions to deregulate the Cohens' apartment do not bar the landlord's subsequent assertion of a common-law cause of action.

The Court of Appeals and this Court have repeatedly held that common-law causes of action have viability independent of many legislatively created regulatory schemes. In *ABN AMRO Bank, N.V. v MBIA Inc.* (17 NY3d 208 [2011]), the Court of Appeals was faced with the question of whether the plaintiffs' common-law fraud claims were preempted by the power of the State Superintendent of Insurance to approve the restructuring of the defendants under various provisions of the Insurance Law.

The plaintiffs attacked the restructuring in a plenary action predicated on common-law fraud, alleging that the restructuring contained a series of fraudulent conveyances designed to allow the defendants to escape their insurance obligations. The defendants moved to dismiss, contending that the complaint was merely a "collateral attack" on the Superintendent's approval of the restructuring.

A majority of this Court had agreed with the defendants that "[a] plenary action that seeks the overturn of the Superintendent's determination, or challenges matters that the determination necessarily encompasses, constitutes 'an impermissible "indirect challenge"' to that determination." (*ABN AMRO Bank, N.V. v MBIA Inc.*, 81 AD3d 237, 246 [1st Dept 2011], citing *Fiala v Metropolitan Life Ins. Co.*, 6 AD3d 320, 321 [1st Dept 2004].) However, our statement on the question of "collateral attack" only applied to claims brought under the Debtor and Creditor Law. The common-law claims were all generally dismissed for failure to state a cause of action.* Finally, we noted that the only appropriate method of challenging the Superintendent's determination was through a CPLR article 78 petition.

The Court of Appeals reversed, beginning its analysis with the observation:

> "It is fundamental that 'Article VI, § 7 of the NY Constitution establishes the Supreme Court as a court of "general original jurisdiction in law and equity"' (*Sohn v Calderon*, 78 NY2d 755, 766 [1991], quoting NY Const, art VI, § 7 [a]). 'Under this grant of authority, the Supreme Court "is

---

* The claim seeking to pierce the corporate veil through declaratory judgment, while not a common-law claim, was also dismissed as not a proper subject for a declaratory judgment and because it would be "in direct conflict with the Superintendent's determinations." (81 AD3d at 245.)

competent to entertain all causes of action unless its jurisdiction has been specifically proscribed" ' (*id.*, quoting *Thrasher v United States Liab. Ins. Co.*, 19 NY2d 159, 166 [1967]). Indeed, 'it has never been suggested that every claim or dispute arising under a legislatively created scheme may be brought to the Supreme Court for original adjudication' (*id.*). Thus, 'the constitutionally protected jurisdiction of the Supreme Court does not prohibit the Legislature from conferring exclusive original jurisdiction upon an agency in connection with the administration of a statutory regulatory program' (*id.* at 767)." (17 NY3d at 222-223.)

The Court then framed the issue thus: whether or not the Superintendent was the "exclusive arbiter of all private claims that may arise" in connection with the defendants' restructuring. (17 NY3d at 224.) In language equally applicable to the instant case, the Court stated:

> "Defendants' contention, taken to its logical conclusion, would preempt plaintiffs' Debtor and Creditor Law and common-law claims. We reject this argument and conclude that there is no indication from the statutory language and structure of the Insurance Law or its legislative history that the Legislature intended to give the Superintendent such broad preemptive power (*see Matter of Zuckerman v Board of Educ. of City School Dist. of City of N.Y.*, 44 NY2d 336, 342-343 [1978] ['Although (the Public Employment Relations Board [PERB]) has exclusive jurisdiction of labor disputes between public employers and public employees involving the right to organize and the right to negotiate in good faith, this jurisdiction does not mean that any and all disputes between such parties fall exclusively to PERB. PERB's jurisdiction encompasses only those matters specifically covered by the Taylor Law'])." (17 NY3d at 224.)

Important to the Court's analysis were the observations that the plaintiffs' rights under the Debtor and Creditor Law and, necessarily, the common law were "historic" and that the Superintendent was without the authority to even consider the plaintiffs' claims. (17 NY3d at 224.) Finally, the Court held that the plaintiffs' claims could not be raised in an article 78 proceeding. (17 NY3d at 225.)

The Court followed *ABN AMRO Bank* with *Assured Guar. (UK) Ltd. v J.P. Morgan Inv. Mgt. Inc.* (18 NY3d 341 [2011]). In that case, the plaintiff asserted a series of common-law claims of breach of fiduciary duty and gross negligence. The defendant moved to dismiss on the grounds that the common-law claims were precluded by the Attorney General's broad grant of power to prosecute "fraudulent securities and investment practices" under the Martin Act. (18 NY3d at 349.) In examining the scope of the statute, the Court stated:

> "Legislative intent is integral to the question of whether the Martin Act was intended to supplant nonfraud common-law claims. It is well settled that 'when the common law gives a remedy, and another remedy is provided by statute, the latter is cumulative, unless made exclusive by the statute' (*Burns Jackson Miller Summit & Spitzer v Lindner*, 59 NY2d 314, 324 [1983] [internal quotation marks and citation omitted]). We have emphasized that 'a clear and specific legislative intent is required to override the common law' and that such a prerogative must be 'unambiguous' (*Hechter v New York Life Ins. Co.*, 46 NY2d 34, 39 [1978])." (18 NY3d at 350-351.)

The Court then observed that the Martin Act "does not expressly mention or otherwise contemplate the elimination of common-law claims." (18 NY3d at 351, citing *ABN AMRO Bank, N.V.*, 17 NY3d at 224.) The Court distinguished its prior holdings in *CPC Intl. v McKesson Corp.* (70 NY2d 268 [1987]), and *Kerusa Co. LLC v W10Z/515 Real Estate Ltd. Partnership* (12 NY3d 236 [2009]), by stating:

> "Read together, *CPC Intl.* and *Kerusa* stand for the proposition that a private litigant may not pursue a common-law cause of action where the claim is predicated solely on a violation of the Martin Act or its implementing regulations and would not exist but for the statute. But, an injured investor may bring a common-law claim (for fraud or otherwise) that is not entirely dependent on the Martin Act for its viability. Mere overlap between the common law and the Martin Act is not enough to extinguish common-law remedies." (18 NY3d at 353.)

In my opinion, Justice Andrias makes an erroneous extrapolation from case law pertaining to the Martin Act: Those cases

involved preemption issues based on a distinction between the exclusive enforcement authority of the Attorney General and the rights of private litigants. Justice Andrias's reliance on *Han v Hertz Corp.* (12 AD3d 195 [1st Dept 2004]) is misplaced for the same reason since he does not take issue with *who* has the right to pursue the claim. Nor does he suggest that the landlord is simply "rephrasing" a claim that precludes a *private* lawsuit. Instead, he finds that the statutory scheme precludes a common-law action because the landlord's entire cause of action is dependent on the existence of the luxury deregulation statute.

There is simply no authority to support such a view. Moreover, the cause of action in this case is not predicated on a violation of the statute per se, but rather on the allegation that the Cohens have circumvented the statutory scheme in order to defraud the landlord of its rightful rent. To be sure, the landlord could not bring the common-law action if the Rent Regulation Reform Act of 1993 (L 1993, ch 253) (hereinafter referred to as Reform Act) had not been enacted. However, the Reform Act would not exist except for the legislature's decision to remedy "th[e] glaring inequity in the rent regulation system whereby property owners [are] required to subsidize high income tenants residing in rent-controlled and rent-subsidized apartments." (*Matter of Classic Realty v New York State Div. of Hous. & Community Renewal*, 309 AD2d 205, 212-213 [1st Dept 2003, Sullivan, J., dissenting] [internal quotation marks omitted], *revd* 2 NY3d 142 [2004].) It would make no sense, therefore, to enact a statute to rectify an inequitable rent situation, but deny a landlord any remedy when a tenant attempts to fraudulently circumvent the statute, let alone a remedy that has existed at common law since the founding of the Republic. In my opinion, this is precisely the type of overlap between a common-law claim and statute that the Court of Appeals held should not "extinguish common-law remedies." (*Assured Guar.*, 18 NY3d at 353.)

Moreover, this Court has consistently followed that direction from the Court of Appeals. In *61 W. 62 Owners Corp. v CGM EMP LLC* (77 AD3d 330 [1st Dept 2010], *mod on other grounds and remanded* 16 NY3d 822 [2011]), we rejected the defendants' contention that the New York City Noise Control Code precluded the plaintiff's action in common-law nuisance. Similarly, and more importantly for its similarity to the posture of this case, in *Chelsea 18 Partners, LP v Sheck Yee Mak* (90 AD3d 38 [1st Dept 2011]), we reversed Supreme Court's dismissal of the plaintiff landlord's plenary action sounding in

common-law nuisance against the defendant tenants of a rent-controlled apartment. Supreme Court held, inter alia, in dismissing the action, that the landlord's sole remedy lay in housing court pursuant to the rent regulation statutory scheme and that the court had no jurisdiction.

We began our analysis in that case in the same manner as the *ABN AMRO Bank* Court:

> "As a threshold issue, Supreme Court has unlimited general jurisdiction over all plenary real property actions, including those brought by a landlord against a tenant. (NY Const, art VI, § 7 [a]; *see Nestor v McDowell*, 81 NY2d 410, 415 [1993].) Moreover, as the landlord correctly asserts, it is for the plaintiff to determine how, and in which court, to plead its case. (*Lex 33 Assoc. v Grasso*, 283 AD2d 272, 273 [1st Dept 2001] [plaintiff entitled to 'chart its own procedural course'].) Thus, the tenants are entirely incorrect in asserting that Supreme Court lacks subject matter jurisdiction." (90 AD3d at 41.)

The analysis of *ABN AMRO Bank*, *Assured Guar.*, *61 W. 62 Owners*, and *Chelsea 18 Partners* clearly controls the threshold issue in the instant dispute and mandates recognition of the validity of a common-law claim for fraud. There is nothing inherent in the statutory scheme for rent regulation that would preclude a common-law claim for fraud. If common-law claims were permitted to proceed in *ABN AMRO Bank* and *Assured Guar.* in the face of extensive statutory regulation, there can be no inherent bar merely because the statutory scheme is rent regulation.

Similarly, both nuisance in *61 W. 62 Owners* and *Chelsea 18 Partners*, and fraud in the instant case are common-law causes of action asserted in the context of a complex statutory scheme of governmental regulation. Merely because the elements of each common-law cause of action are different, I find that there is no coherent argument for permitting a nuisance claim to proceed but not a claim for fraud, as a matter of law. The Cohens point to no section of the Rent Stabilization Code that affirmatively bars such common-law claims, nor does Justice Andrias.

The majority, in my opinion, is incorrect in stating that the "law vests *exclusive* . . . jurisdiction in DHCR to determine whether a rent-stabilized tenant's household income exceeds the threshold for deregulation" (emphasis added). First, there is

no such specific language in the statute. (*See* Administrative Code § 26-504.3.) Nor can exclusive jurisdiction be inferred based on the DHCR's "specialized experience and technical expertise." (*See Sohn v Calderon*, 78 NY2d 755, 768 [1991].) The statute simply provides that, in response to a landlord's petition contesting that a tenant's annual household income as shown on an income certification form (hereinafter referred to as ICF) is no more than $175,000, the DHCR requests the Department of Taxation and Finance (hereinafter referred to as the DTF) to verify the income. In turn, the DTF provides nothing more than a "yes" or "no" answer as to whether the tenant has understated the annual income on the ICF compared to that filed on the tenant's annual tax return. There is no "specialized experience" or "technical expertise" required to carry out these steps. Indeed, I would posit exactly the opposite.

Further, as the landlord asserts, the Cohens' position rests on a leap from the predicate that the DHCR has exclusive jurisdiction over petitions seeking to deregulate an apartment to the unsupported conclusion that anything that "emanates from" the deregulation provision must somehow also be within DHCR's exclusive jurisdiction. However, the statute clearly does not provide the DHCR with any authority or any mechanism for testing the veracity of the income tax return, or for the investigation of fraudulent conduct. (*See Matter of London Terrace Gardens v New York State Div. of Hous. & Community Renewal*, 6 Misc 3d 1020[A], 2005 NY Slip Op 50132[U] [Sup Ct, NY County 2005].) Nor does it specifically state that a single DTF verification is the landlord's exclusive remedy in the event that a landlord disputes a tenant's ICF. Indeed, the DTF verification can hardly be characterized as a remedy; it is simply a step in the process of deregulation. Effectively, the statute does not provide the landlord with any remedy against a duplicitous tenant. In my opinion, therefore, the statute must be viewed as creating a framework by setting the schedule and formula (when rent is no less than $2,000 and annual household income is more than $175,000) for obtaining relief regardless of whether that relief is by statutory mechanism or common-law claim.

The majority, quoting *Nestor* (257 AD2d at 396), lauds the "simpl[icity] and consisten[cy]" of the single DTF verification "methodology," exhibiting a tunnel vision to the altar of primacy-of-statute, and thus ignoring the foundation of this country on the common law. By so doing, moreover, it ignores a

statement by the Court of Appeals that clearly contemplates the possibility of the DTF's making an error. (*See Classic Realty*, 2 NY3d at 146 ["luxury decontrol procedures . . . contemplate a single verification, the result of which is binding on all parties *unless it can be shown that DTF made an error*" (emphasis added)].) Given the absence of any statutory provision that could rectify a verification based on fraud or deceit, the Court's statement must be viewed as supporting the pursuit of a common-law remedy, especially where the challenge is to the veracity of the one document on which the DTF verification and the DHCR determination are based.

That being said, however, the Cohens argue convincingly that the fraud claim, as pleaded, fails to state a cause of action. To state a claim for common-law fraud, a plaintiff must allege a material misrepresentation of fact; that the misrepresentation was made with an intent to defraud or mislead; that the plaintiff reasonably relied upon the misrepresentation, and that it suffered damages as a result of its reliance. (*See IDT Corp. v Morgan Stanley Dean Witter & Co.*, 63 AD3d 583, 586 [1st Dept 2009].) The landlord did not meet the strict pleading requirements of pleading fraud with particularity. (*See* CPLR 3016 [b]; *Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 178-179 [2011].)

On this record, the landlord's fraud allegations, even construed most favorably to the landlord, are wholly speculative, since there are no allegations from which it could reasonably be inferred that the Cohens provided fraudulent income statements. There was no non-conclusory allegation that the Cohens earned more than $175,000 in two consecutive years and intentionally misrepresented their income to the DHCR. (*See generally Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d 553, 560 [2009].)

Acosta and Manzanet-Daniels, JJ., concur with Tom, J.P.; Andrias, J., concurs in a separate opinion; Catterson, J., concurs in a separate opinion.

Order, Supreme Court, New York County, entered September 30, 2011, affirmed, with costs.